ROLAND LAPIERRE AND WIFE, LEAH LAPIERRE v. SAMCO DEVELOPMENT CORPORATION, D/B/A AMERICRAFT BUILDERS

No. 9014SC946

(Filed 6 August 1991)

1. **Sales § 6.4 (NCI3d) — residence — builder-vendor — implied warranty of habitability**

The trial court did not err by denying defendant's motions for a directed verdict, judgment n.o.v., and a new trial on a claim for breach of the implied warranty of habitability in the construction of a garage and driveway where plaintiffs put on evidence that the garage was not constructed in a manner that conformed to standards of workmanlike quality, and the testimony of plaintiffs' expert witnesses also supports the conclusion that the driveway was not constructed in a

LAPIERRE v. SAMCO DEVELOPMENT CORP.

[103 N.C. App. 551 (1991)]

workmanlike manner and did not meet the standard of workmanlike quality then prevailing at the time and place of construction.

   Am Jur 2d, Building and Construction Contracts § 27; Vendor and Purchaser §§ 330, 335.

2. **Unfair Competition § 1 (NCI3d)— sale of house—construction of deck—unfair practice**

   The trial court did not err in finding that defendant had engaged in unfair and deceptive practices in the construction of a deck where defendant's brochure provided a picture showing the location of the deck and gave its exact dimensions; defendant's salesman told plaintiffs that the deck would be built according to the description in the brochure; defendant's vice-president testified that it was impossible to locate the deck in that location because of the ash clean-out door on the chimney; plaintiffs' expert witness testified that building the deck as represented would have created a fire hazard; and blueprints for the house indicated that the deck would be built to certain dimensions and in a certain location. Defendant represented that it would build the deck in a certain location and to certain dimensions knowing that it was impossible to build the deck in that location, then relocated the site for the deck and built the deck smaller than represented. These representations have the capacity to mislead consumers. N.C.G.S. § 75-1.1.

   Am Jur 2d, Building and Construction Contracts § 126; Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.

3. **Damages § 38 (NCI4th)— construction of residence—unfair practice and breach of implied warranty of habitability— damages**

   The trial court did not err in an action for unfair and deceptive practices and breach of the implied warranty of habitability arising from the construction and sale of a house by instructing the jury only on repair value. Awarding plaintiffs the cost of building the deck they bargained for puts them in their original position; although the garage cost $4,500 to build and will cost $21,477.24 to repair, it is virtually useless for its intended purpose without the repairs; and the defects

LAPIERRE v. SAMCO DEVELOPMENT CORP.

[103 N.C. App. 551 (1991)]

in the construction of the driveway are so major as to justify the cost of repair.

**Am Jur 2d, Building and Construction Contracts § 79.**

**4. Unfair Competition § 1 (NCI3d) — construction and sale of house — unfair and deceptive practice — refusal to settle — attorney fees**

The trial court did not err by finding that there was an unwarranted refusal to settle an action for unfair and deceptive practices and breach of the implied warranty of habitability in the construction and sale of a house, so that attorney fees could be awarded, where defendant offered to increase the size of the deck but plaintiffs refused because of concerns about the quality of defendant's workmanship; plaintiffs offered to settle the lawsuit for $14,000; and defendant rejected that proposal and offered to settle for $2,000.

**Am Jur 2d, Building and Construction Contracts § 27; Costs § 72.**

**5. Unfair Competition § 1 (NCI3d) — construction and sale of house — unfair and deceptive practices — amount of attorney fees**

The trial court did not err in its award of attorney fees under N.C.G.S. § 75-16.1 where the findings were sufficient to support the award and defendant did not show any abuse of discretion.

**Am Jur 2d, Building and Construction Contracts § 27; Costs § 78.**

APPEAL by defendant from judgments entered 4 April 1990 and 8 May 1990 by *Judge George R. Greene* in DURHAM County Superior Court. Heard in the Court of Appeals 20 March 1991.

Plaintiffs filed an action on 15 April 1988 against Samco Development Corporation, d/b/a Americraft Builders, alleging that defendant breached the implied warranty of habitability and engaged in unfair and deceptive trade practices in the construction of plaintiffs' home.

In early 1985 Mr. Lapierre drove through a new residential development in Durham County and stopped at a model home there. He spoke to a salesman, who showed him a plat map of the development and the available floor plans. Mr. Lapierre talked with the

salesman on several other occasions. The salesman showed him various lots in the development and discussed the different floor plans and features that were available. Eventually, Mr. and Mrs. Lapierre selected a lot and one of the floor plans called the "Mayberry." They added several optional features including a brick fireplace, a deck, and a single car garage. In April 1985 the parties signed a purchase agreement for the house and defendant Americraft began construction.

The house was completed and the closing was held on 24 September 1985. After plaintiffs moved into the house, they noticed problems with the garage, the deck, and the driveway. When plaintiffs parked their car in the garage, they found that the placement of the brick steps leading from the kitchen to the garage reduced the space in the garage so much that they had to drive the car to the back wall of the garage to have enough room to open the car doors. With the car pulled in so far, there was no room to walk around the car and it was difficult to reach the kitchen door.

The floor plan brochure that defendant provided plaintiffs showed both the dimensions and location of the wooden deck. Americraft built the deck smaller and in a different location than was shown on the brochure. In addition, the driveway surface contained several depressions that collected rainwater in puddles. Defendant attempted to correct the problem by repouring two sections of the concrete driveway. In spite of defendant's attempt, the driveway cracked and the "puddling" problem continued.

The trial court denied defendant's motion for a directed verdict at the close of plaintiffs' evidence. The jury returned a verdict finding that defendant had represented to plaintiffs that it would build a ten foot by sixteen foot wooden deck in the location shown on the "Mayberry" brochure and building plans and then failed to do so. The jury also found that defendant breached an implied warranty of workmanlike quality in the construction of the garage and driveway. Additionally, the jury found that defendant did not represent that it would build an oversize garage and then fail to do so, and that defendant did not breach an implied warranty of workmanlike construction in the construction of plaintiffs' deck. The trial court held that defendant's "misrepresentations" concerning the deck constituted unfair and deceptive trade practices under G.S. 75-1.1 and awarded treble damages and attorneys fees. Defendant appeals.

LAPIERRE v. SAMCO DEVELOPMENT CORP.

[103 N.C. App. 551 (1991)]

*Maxwell & Hutson, P.A., by James H. Hughes and Graham H. Kidner, for plaintiff-appellees.*

*Manning, Fulton & Skinner, by Linda K. Wood, for defendant-appellant.*

EAGLES, Judge.

[1] Defendant first contends that the trial court erred in denying its motions for a directed verdict, judgment notwithstanding the verdict, and a new trial on plaintiffs' claim for breach of the implied warranty of habitability in the construction of the garage and driveway. We disagree.

Defendant contends that the evidence was insufficient to establish a breach of the implied warranty of habitability in the construction of the garage and the driveway. Defendant argues that the implied warranty of habitability applies only to "hidden, major defects which affect the 'essential utility' of the residence." Defendant contends that the plaintiffs had an opportunity to see the garage before closing and that the Lapierres should have known the size of the garage. Here, the evidence indicates that Mr. Lapierre expressed his concern to the builder about the effect of the steps extending into the garage. The salesman told him "[D]on't worry about it. We'll take care of it." Additionally, plaintiffs had no opportunity to try to park their car in the garage until after they had closed on the house. Defendant also argues that there is no allegation that the garage was "structurally unsound or unusable" or that the driveway was structurally defective.

The implied warranty of habitability means both that "the dwelling, together with all its fixtures, is sufficiently free from major structural defects" and that it "is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction." *Hartley v. Ballou*, 286 N.C. 51, 62, 209 S.E.2d 776, 783 (1974). In *Lyon v. Ward*, 28 N.C. App. 446, 450, 221 S.E.2d 727, 729 (1976), this Court held that *Hartley* "stand[s] for the proposition that a builder-vendor impliedly warrants to the initial purchaser that a house and all its fixtures will provide the service or protection for which it was intended under normal use and conditions." Additionally, the Supreme Court has said, "The test of a breach of an implied warranty of habitability in North Carolina is not whether a fixture is an 'absolute essential utility to a dwelling house.' The test is whether

LAPIERRE v. SAMCO DEVELOPMENT CORP.

[103 N.C. App. 551 (1991)]

there is a failure to meet the prevailing standard of workmanlike quality." *Gaito v. Auman*, 313 N.C. 243, 252, 327 S.E.2d 870, 877 (1985).

Here, plaintiffs put on evidence that the garage was not constructed in a manner that conformed to standards of workmanlike quality. Plaintiffs presented the testimony of two witnesses who were experts in residential construction. One expert testified that the standard width for a single car garage was 12 feet of usable space excluding obstructions such as steps. The other expert testified that the stairway leading from the garage into the kitchen violated the North Carolina Building Code. The Building Code requires a minimum width of thirty-six inches for platforms at building entrances. The Lapierres' garage had a usable width of 11 feet one inch and the stoop in the garage was only 26 and one-half inches wide. The plaintiff testified that once his car was parked in the garage, he had to pull to the back wall of the garage to have enough room to open the door and had to "squeeze" between the side of the car and the stairway to reach the kitchen. Plaintiff also testified that because the stoop was so narrow, the kitchen door could only be opened to a 60 degree angle. From this evidence, we conclude that the jury did not err when it concluded that Americraft breached the implied warranty of habitability by failing to conform to workmanlike standards in constructing the garage.

The testimony of plaintiffs' expert witnesses also supports the conclusion that the driveway was not constructed in a workmanlike manner and did not meet the standard of workmanlike quality then prevailing at the time and place of construction. Both experts testified that the driveway should have been poured in sections with expansion or control joints every twenty feet. One expert testified that the driveway should have been poured "in one process" so that the finished driveway would have been uniform in color. He also testified that the driveway should have sloped in such a way that rainwater would run off rather than collect on the surface. The plaintiff testified that rainwater would collect in several depressions on the driveway surface. Defendant had attempted to correct the problem by taking out strips of concrete and patching it with concrete left over from other jobs. Plaintiff testified that even after the attempts to correct the depressions in the driveway, the water still collected on the surface, the driveway cracked, and stones had begun to "pop out of it." From this evidence we conclude that the jury did not err when it concluded that the

LAPIERRE v. SAMCO DEVELOPMENT CORP.

[103 N.C. App. 551 (1991)]

defendant breached the implied warranty of habitability in constructing the driveway.

[2] Defendant next argues that the trial court erred in finding that defendant had engaged in unfair and deceptive trade practices in construction of the deck. We disagree.

Defendant contends that the evidence was insufficient to establish that it had engaged in any unfair or deceptive conduct. In *Marshall v. Miller* the Supreme Court said:

> Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. As also noted in *Johnson*, under Section 5 of the FTC Act, a practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required. Consistent with federal interpretations of deception under Section 5, state courts have generally ruled that the consumer need only show that an act or practice possessed the tendency or capacity to mislead, or created the likelihood of deception, in order to prevail under the states' unfair and deceptive practices act.

*Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) (citations omitted).

Here, the evidence was sufficient to support the trial court's conclusion that defendant engaged in unfair and deceptive trade practices concerning the deck. Defendant Americraft's brochure provided a picture showing the location of the deck and gave its exact dimensions. Americraft's salesman told the plaintiff that the deck would be built according to the description in the brochure. Americraft's vice president testified that because of the location of the ash clean-out door on the chimney, it was impossible to locate the deck where the salesman and the brochure had represented that it would be built. Plaintiffs' expert witness testified that building the deck as represented would have created a fire hazard. Additionally, the model home blueprints or plans for the house indicated that the deck would be built to certain dimensions and in a certain location. Although here plaintiff did not see the plans before the lawsuit was instituted, it is not necessary to show that plaintiff

was actually deceived but only that the tendency or capacity to mislead exists. *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981).

Here, defendant represented through its salesman, sales brochures, and blueprints that it would build the deck in a certain location and to certain dimensions. Defendant knew that it was impossible to build the deck in that location. Defendant relocated the site for the deck and built the deck smaller than represented. We think that these representations have the capacity to mislead consumers. Accordingly, we hold that the trial court did not err in finding that defendant violated G.S. 75-1.1.

**[3]** Next, defendant contends that the trial court erred because it did not instruct the jury to calculate damages based on diminution of fair market value. Defendant argues that it was inappropriate to instruct the jury on repair value only because here substantial destruction and waste are involved in making the repairs. We find appellant's argument unpersuasive. Plaintiffs here brought an action for unfair and deceptive trade practices under Ch. 75 and for breach of the implied warranty of habitability. We do not think that the trial court erred in instructing the jury on damages under either theory of recovery.

G.S. 75-16 provides:

> [I]f any person shall be injured . . . such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

"An action for unfair or deceptive acts or practices is 'the creation of . . . statute. It is, therefore, sui generis. It is neither wholly tortious nor wholly contractual in nature . . . .' " *Bernard v. Central Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 230, 314 S.E.2d 582, 584 (quoting *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 704, 322 N.E.2d 768, 779 (1975) ), *disc. review denied*, 311 N.C. 751, 321 S.E.2d 126 (1984). This Court has also noted that "[t]he statute merely refers to the person being 'injured' and does not state the method of measuring damages. Consequently, there is confusion as to the proper measure of damages in an unfair or deceptive act or practice case." *Id.* at 231, 314 S.E.2d at 585. The Court has also said that

## LAPIERRE v. SAMCO DEVELOPMENT CORP.

[103 N.C. App. 551 (1991)]

an action for unfair or deceptive acts or trade practices is a distinct action apart from fraud, breach of contract, or breach of warranty. Since the remedy was created partly because those remedies often were ineffective, it would be illogical to hold that only those methods of measuring damages could be used. "To rule otherwise would produce the anomalous result of recognizing that although G.S. 75-1.1 creates a cause of action broader than traditional common law actions, G.S. 75-16 limits the availability of any remedy to cases where some recovery at common law would probably also lie.

The measure of damages used should further the purpose of awarding damages which is "to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money."

*Id.* at 232, 314 S.E.2d at 585 (citations omitted). Here, plaintiffs were promised a ten foot by sixteen foot deck in the location shown on the "Mayberry" brochure and building plans. In our view, awarding plaintiffs the cost of building the deck they bargained for puts them in their original position and "gives back to [them] that which was lost as far as it may be done by compensation in money." Accordingly, we hold that the trial court's instruction on damages for the deck was proper.

In *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 225 S.E.2d 557 (1976), the Supreme Court said that where there is a breach of the implied warranty of habitability the measure of damages is either the difference between the reasonable market value of the subject property as impliedly warranted and its reasonable market value in its actual condition or the amount required to bring the property into compliance with the implied warranty. In *Kenney v. Medlin Construction and Realty Co.*, 68 N.C. App. 339, 344-45, 315 S.E.2d 311, 314-15, *disc. review denied*, 312 N.C. 83, 321 S.E.2d 896 (1984) (citations omitted), this Court said:

Our courts have adhered to the general rule that the cost of repair is the proper measure of damages unless repair would require that a substantial portion of the work completed be destroyed. In such case, the diminution in value method may be the better measure of a party's damages.

The policy underlying this general rule recognizes the need to avoid economic waste and undue hardship to the de-

LAPIERRE v. SAMCO DEVELOPMENT CORP.

[103 N.C. App. 551 (1991)]

fendant contractor when, although the building substantially conforms to the contract specifications, a minor defect exists that does not substantially lower its value.

. . . .

While the diminution in value method can avoid economic waste, when the cost of repair does not involve an imprudent expense, the cost of repair method may best ensure the injured party of receiving the benefit of his or her bargain, even if repair would involve destroying work already completed. When defects or omissions in construction are so major that the building does not substantially conform to the contract, then the decreased value of the building constructed justifies the high cost of repair.

Here, the jury found that the defendant breached the implied warranty of habitability in its construction of the driveway and garage. The garage cost $4,500 to build and plaintiffs estimate that it will cost $21,477.24 to repair. Without the repairs, the garage is virtually useless for its intended purpose. Similarly, a new driveway was included in the base price of the house. Plaintiffs' expert testified that it would cost $6,741.19 to repair the driveway. Considering the evidence presented at trial about the condition of the driveway, we think that the defects in the construction of the driveway are so major as to justify the cost of repair. As to the garage and driveway claims, we cannot say that the cost of repair is disproportionately high when compared to the loss in value without the repair.

[4] Finally, defendant argues that the trial court erred in awarding attorneys fees. Defendant first argues that the evidence was insufficient to support the trial court's finding that there was an unwarranted refusal to settle by Americraft. In order to recover attorneys fees, the plaintiff must establish that there was an unwarranted refusal by defendant to fully resolve the matter which gave rise to the claim. G.S. 75-16.1. Here, the trial court found that defendant offered to increase the size of the deck but that plaintiffs declined to accept the offer because of their concern about the quality of defendant's workmanship. The court also found that the plaintiffs offered to settle the lawsuit for $14,000 and that defendant rejected this proposal and offered to pay $2,000 to settle. The trial court then concluded:

LAPIERRE v. SAMCO DEVELOPMENT CORP.

[103 N.C. App. 551 (1991)]

2. That the attempt to settle the lawsuit by the defendant, in regard to the wooden deck, was unreasonable in that the offers made by the defendant, considering the judgment entered for the plaintiffs at the conclusion of the trial, were inadequate and constituted an unwarranted refusal by the defendant to resolve the dispute between the parties.

3. That the plaintiffs' offer to settle the entire lawsuit for the sum of $14,000, taken in the light of the Court's award of damages, was reasonable; defendant was unreasonable in refusing to accept that amount or to negotiate or offer some reasonable amount in an attempt to settle the matter.

Here, the evidence is sufficient to support the finding that there was an unwarranted refusal to settle by Americraft. The award of attorneys fees is within the discretion of the trial court. *Morris v. Bailey*, 86 N.C. App. 378, 358 S.E.2d 120 (1987). We find no abuse of discretion.

[5] Defendant also argues that the evidence was insufficient to support the amount awarded for attorneys fees. We disagree. In awarding attorneys fees under G.S. 75-16.1, the trial court must make findings of fact to support the award. Appropriate findings include findings regarding the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney. *Morris v. Bailey*, 86 N.C. App. 378, 358 S.E.2d 120 (1987). Here, the trial court found:

The time expended by the plaintiffs' attorneys is reasonable considering the nature and difficulty of the case; a reasonably high degree of skill was required to present the case for plaintiffs through to trial, considering the need to involve and examine two expert witnesses and to succeed upon the theories of unfair trade practice and breach of implied warranty of habitability; the hourly rates charged by the plaintiffs' attorneys are appropriate for the work in question considering the age of the plaintiffs' attorneys and the number of years of practice of the plaintiffs' attorneys; the plaintiffs' attorneys demonstrated that they were able and competent attorneys, and, therefore, justified the hourly rates that they billed according to the statement attached to the affidavit of Mr. Hughes.

This finding is supported by the evidence. The plaintiffs' attorney presented a billing statement from the law firm and an affidavit which estimated that one-third of the time spent on the preparation and prosecution of the case was related to the deck. The fees totaled $17,664. The trial court awarded $5,705.73. This amount is slightly less than one-third of the total amount plaintiffs were billed for attorneys' fees. Here, the findings of fact are sufficient to support the award and defendant has not shown any abuse of discretion. Accordingly, this assignment of error is overruled.

For the reasons stated, the judgment of the trial court is

Affirmed.

Chief Judge HEDRICK and Judge WELLS concur.