WAYNE JACK BOYD AND LINDA BOYD, PLAINTIFFS V. EZRA B. DRUM, JESSIE S. DRUM, BALLS CREEK SALVAGE CO., INC., JAMES G. READ AND BALLS CREEK SALVAGE CO. AUTO DISMANTLERS & RECYCLERS, INC., DEFENDANTS

No. COA97-941

(Filed 2 June 1998)

### 1. Pleadings § 400 (NCI4th)— motion to amend pleadings to conform to evidence—denied—no error

The trial court did not abuse its discretion in an action arising from the sale of an auto salvage business by not allowing plaintiffs to amend their complaint to conform to the evidence. Although plaintiffs contend that the case was tried on the theory that there was a purchase and sale contract which was breached, the evidence reveals that there never was a meeting of the minds as to the terms of the contract. Since there was no evidence to warrant submission of a contract and breach issue, the trial court did not abuse its discretion in denying plaintiffs' motion.

### 2. Negotiable Instruments and Other Commercial Paper § 117 (NCI4th)— loans to business—assumption by purchaser—release of former owner

The trial court did not err by directing a verdict for defendants Drum and Balls Creek Salvage Company on a claim for loaned money arising from the sale of an auto salvage business where there was no evidence that any money was ever loaned to the Drums and the loans to Balls Creek were assumed by a subsequent purchaser. Plaintiff accepted eleven payments based on the promissory note after Mr. Boyd signed a release and no evidence was presented to show that the note was accepted or that the release was signed under duress. Finally, it is inconsistent for the Boyds to say they were "forced" to accept the note when they freely accepted the payments until the subsequent purchaser could no longer make them.

### 3. Conspiracy § 11 (NCI4th)— sale of auto salvage business— civil conspiracy claim—directed verdict

The trial court did not err by granting a directed verdict for defendants on a civil conspiracy claim arising from the sale of an auto salvage business where there was insufficient evidence showing a civil conspiracy. Mr. Boyd's testimony and deposition showed that he felt there was a conspiracy but did not have more than a mere suspicion.

**4. Unfair Competition or Trade Practices § 38 (NCI4th)—
sale of auto salvage business—action on contract—no
aggravating circumstances**

The trial court did not err by granting a directed verdict for
defendants on an unfair and deceptive trade practices claim aris-
ing from the sale of an auto salvage business. It is well recognized
that actions for unfair or deceptive trade practices are distinct
from actions for breach of contract; substantial aggravating cir-
cumstances attendant to the breach must be shown to sustain an
action under N.C.G.S. § 75-1.1. Plaintiffs here have not shown or
alleged any substantially aggravating circumstances on the part
of defendants.

Judge GREENE dissenting in part.

Appeal by plaintiffs from judgment entered 11 March 1997 by
Judge James L. Baker Jr., in Catawba County Superior Court. Heard
in the Court of Appeals 1 April 1998.

In 1956, Ezra Drum started a salvage business in Catawba County
on property owned by Ezra and his wife Jessie ("the Drums"). The
business was later incorporated as Balls Creek Salvage Company,
Inc. ("Balls Creek"). The Drums were the sole shareholders. In 1993,
plaintiffs Jack and Linda Boyd ("the Boyds") met with the Drums con-
cerning the potential sale of Balls Creek. Jack Boyd and Ezra Drum
agreed on a total sales price of $750,000.00 for both Balls Creek and
the land on which it was located. The accountant for the Drums and
Balls Creek prepared a document entitled "Balls Creek Salvage Co.,
Inc. Duties of Potential Sales Terms May 5, 1993," which separated
the total purchase price into an initial infusion of cash into the busi-
ness in the amount of $150,000.00, an installment purchase of capital
stock in the amount of $300,000.00, and an installment purchase of
the Drums' real estate in the sum of $300,000.00. The document was
not signed by any of the parties, nor did it contain all of the terms of
a purchase agreement, but it referred to the "potential sale" of Balls
Creek and the real estate. The document also provided for "work[ing]
out terms" for the payment of $600,000.00 of the total sales price. It
further provided that after payment of the initial $150,000.00, the
"installment purchase of the remaining capital stock will take place
on some as yet undecided time schedule . . . ." Finally, the "arrange-
ment will continue for a period of three years and then be subject to
revision or elimination based on the success of the business and the
remaining installment payout." All of the parties met with the attor-

ney for the Drums, discussed the sale and purchase, and thought they had reached an agreement.

Jack Boyd began working for Balls Creek as general manager in May 1993. In June 1993, Linda Boyd became office manager for the corporation. During the time Jack Boyd was general manager of Balls Creek, he and his wife paid a total of $158,500.00 into the corporation. With the agreement of the Boyds, the monies advanced were carried on the books of the corporation as "loans." The Boyds never paid any funds to the Drums individually.

The attorney for the Drums prepared documents which included all details of the purchase and forwarded them to the Boyds. The Boyds were not in agreement with all the terms and discussed them with their attorney. The attorney for the Boyds prepared a "counter proposal" and sent the document to the Drums' attorney. Although the parties continued to negotiate through their respective counsel, they were unable to ever agree on all the terms.

Ezra Drum then began to look for another buyer for the business. On 11 March 1994, the Drums executed an Exclusive Right to Sell Listing Contract giving Carroll Walker and Company the right to list for sale Balls Creek and the Drums' real estate. Plaintiff Jack Boyd also executed the listing agreement as a "partner." After some unsuccessful negotiations, defendant James Read ("Read") began to negotiate a purchase. Ezra Drum told Read that the Boyds would have to be satisfied in order to make the deal. Ezra Drum told Jack Boyd about the proposed sale and that the Boyds would be taken care of. Jack Boyd testified that Mr. Drum told him that if he did not go along with the arrangement, Mr. Drum would put the business into bankruptcy. Mr. Drum denied any such statement. On 9 September 1994, Read executed a promissory note in the sum of $158,500.00 to the Boyds. The note provided for interest at the rate of seven percent per annum, with monthly payments in the amount of $1,000.00 due on 9 October 1994 and the ninth of each month thereafter for five years. The entire balance was then due and payable. The note provided in part, "This note is given for money owed (assumed from Balls Creek Salvage Co., Inc.) . . . ." The note was not secured. On 12 September 1994, the Drums completed the sale to Read for a total price of $750,000.00. On that day, Read presented a letter to Jack Boyd. The letter was in the form of a release of the Drums and Balls Creek from liability to the Boyds. It was not under seal. Mrs. Boyd did not sign the letter. Mr. Boyd testified that he did not agree with the

release, but Read told him it had to happen for the sale of the business to go through. After the closing in September 1994, the business was incorporated by Read as Balls Creek Salvage Co. Auto Dismantlers & Recyclers, Inc. ("ADR"). After the sale, Jack and Linda Boyd continued to work for Read, and served as Secretary and Vice-President respectively of ADR. Payments of $1,000.00 each month were made to the Boyds on the Read promissory note until August 1995, when there was a default in payments. The balance due on the promissory note on 1 September 1995, including accrued interest, was $157,645.80.

The Boyds instituted this action in February 1996 against the Drums, Balls Creek, Read, and ADR. Their complaint set out six causes of action, including: (1) $157,645.80 due for loans to the Drums and Balls Creek; (2) the balance due on the promissory note from Read; (3) $37,025.18 due from ADR for loans; (4) fraud and civil conspiracy by the Drums and Read; (5) the possession of a 1993 GMC vehicle; and (6) treble damages due to unfair and deceptive trade practices of defendants. Prior to trial, plaintiffs voluntarily dismissed their third cause of action and the fifth cause of action was settled between the parties.

At the conclusion of their evidence, plaintiffs moved to amend the pleadings to plead breach of contract, and requested that issues of breach of contract be submitted to the jury. The trial court denied the request. The trial court then directed verdicts for defendants on the first, fourth, and sixth causes of action. On the second cause of action on the promissory note, the trial court denied Read's motion for directed verdict. After a recess, the attorneys for plaintiffs and Read announced they had reached a settlement of the action on the note and that Read would allow judgment to be taken against him in the amount of $140,500.00. Plaintiffs appeal.

*Ruff, Bond, Cobb, Wade & Bethune, L.L.P., by Robert S. Adden, Jr., for plaintiff appellants.*

*Waddell, Mullinax & Williams, L.L.P., by Lewis E. Waddell, Jr., for defendant appellees.*

HORTON, Judge.

Plaintiffs contend the trial court erred in: (I) denying their motion to amend the pleadings to conform to the evidence; and (II) granting directed verdicts and dismissing the cases against defendants Drum

and Balls Creek. Defendants Read and ADR are not parties to this appeal.

## I.

[1] Plaintiffs first assign as error the failure of the court to allow them to amend their complaint to conform to the evidence. A motion to amend the pleadings is addressed to the sound discretion of the trial court and is not reviewable on appeal in the absence of a showing of abuse of discretion. *Flores v. Caldwell*, 14 N.C. App. 144, 149, 187 S.E.2d 377, 381 (1972). In the instant case, there has been no showing of an abuse of discretion. Plaintiffs contend the case was tried on the theory that there was a purchase and sale contract between the Boyds and the Drums, such contract was breached by the Drums, and the court abused its discretion in failing to amend the pleadings to conform to evidence of such contract and its breach. We disagree.

Contrary to the position taken by plaintiffs, their evidence reveals there was never a meeting of the minds as to the terms of a contract for their purchase of Balls Creek and the underlying real estate. "It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995). To constitute a valid contract, the parties " 'must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement.' " *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974) (citation omitted).

Even viewing the record in the light most favorable to plaintiffs shows that there was no contract. The record reveals, through plaintiff Jack Boyd's own testimony, that plaintiffs knew there was no contract and that the parties were merely trying to negotiate one. Since there was no evidence to warrant submission of a contract and breach issue to the jury, the court did not abuse its discretion in denying plaintiffs' motion. Thus, this assignment of error is overruled.

## II.

Plaintiffs also complain about the direction of verdicts in favor of the Drums and Balls Creek. Upon defendants' motion for a directed verdict, the evidence must be taken as true and considered in the light most favorable to plaintiffs. *Farmer v. Chaney*, 292 N.C. 451,

452-53, 233 S.E.2d 582, 584 (1977). All evidentiary conflicts are resolved in favor of the nonmovants. *Daughtry v. Turnage*, 295 N.C. 543, 544, 246 S.E.2d 788, 789 (1978). A directed verdict motion should be denied if there is more than a scintilla of evidence to support plaintiffs' prima facie case. *Wallace v. Evans*, 60 N.C. App. 145, 146, 298 S.E.2d 193, 194 (1982). However, if plaintiffs fail to present evidence of each element of their claim for relief, they will not survive a directed verdict motion. *Felts v. Liberty Emergency Service*, 97 N.C. App. 381, 383, 388 S.E.2d 619, 620 (1990).

(A) Loaned Money

[2] As to the first cause of action for loaned money, there is no evidence that any money was ever loaned to the Drums. Plaintiffs allege in their complaint that "Defendant Ezra Drum requested the Plaintiffs to make various loans *to the company*." (Emphasis added.) The complaint further states that "[t]he corporate records of the Defendant Ball[s] Creek Salvage acknowledged that the Plaintiffs loaned $160,000.00 *to the company* . . . ." (Emphasis added.) Since no evidence was presented that the money was loaned to the Drums, a directed verdict in favor of the Drums is appropriate.

In addition, the loans to Balls Creek were assumed by Read in connection with the purchase. Read executed a promissory note in favor of plaintiffs. The bottom portion of the note indicated that it was for money owed by Balls Creek Salvage Company, Inc. Mr. Boyd also signed a release of the Drums and Balls Creek from any liability resulting from the sale of Balls Creek to Read. Even though Mrs. Boyd did not sign the release, Mr. Boyd acted as her agent. " 'The agency of the husband for the wife may be shown by direct evidence or by evidence of such facts and circumstances as will authorize a reasonable and logical inference that he was empowered to act for her * * *.' " *Norburn v. Mackie*, 262 N.C. 16, 23, 136 S.E.2d 279, 284 (1964). Only " '[s]light evidence of the agency of the husband for the wife is sufficient to charge her where she receives, retains, and enjoys the benefit of the contract[]' " negotiated by her husband. *Id.*

The Boyds accepted eleven payments based on the promissory note after Mr. Boyd signed the release. Since Mrs. Boyd accepted the benefits of the payments, Mr. Boyd acted as her agent when he signed the release allowing Read to purchase Balls Creek. No evidence was presented to show the note was accepted or that the release was signed "under duress." At most, Mr. Drum stated the reality that the struggling business might go into bankruptcy if it were not sold to

Read. Even if a jury believed the testimony of Mr. Boyd, this evidence still would not be enough to support duress.

Furthermore, the Boyds did not plead duress or have a cause of action in the complaint to void or set aside the note or release based on duress or coercion. As a matter of fact, the Boyds participated in the new business, ADR, acting as officers. Mrs. Boyd even wrote some of the checks to herself and her husband to apply to the note. Nothing was said about duress or lack of consideration until the payments ceased. In addition, the Boyds settled the cause of action against Read on the note. It is inconsistent for the Boyds to say they were "forced" to accept the note when they freely accepted the payments until Read could no longer make them. Thus, this assignment of error is overruled.

(B)  Civil Conspiracy

[3]  A civil conspiracy claim consists of: (1) an agreement between two or more persons; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) which agreement resulted in injury to the plaintiff. *Stewart v. Kopp*, 118 N.C. App. 161, 165, 454 S.E.2d 672, 675, *disc. review denied*, 340 N.C. 263, 456 S.E.2d 838 (1995). Although an action for civil conspiracy may be established by circumstantial evidence, sufficient evidence of the agreement must exist "to create more than a suspicion or conjecture in order to justify submission of the issue to a jury." *Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981).

In the instant case, we do not find sufficient evidence showing a civil conspiracy. The testimony reveals that Read contacted the Boyds first regarding his interest in purchasing Balls Creek. Mr. Boyd signed a release of the Drums and Balls Creek, and the Boyds did not object when Read purchased Balls Creek. In fact, the Boyds accepted payments from Read until Read defaulted on the promissory note. Further, the Boyds continued to work for Read as employees and acted as officers of ADR. The evidence merely reveals that Read was unable to continue paying on the note. Mr. Boyd's testimony taken at a deposition even shows that Mr. Boyd does not have evidence of a conspiracy, although he feels there was one. Since there is no evidence of a civil conspiracy other than mere suspicion by Mr. Boyd, this assignment of error is overruled.

(C)  Unfair and Deceptive Trade Practices

[4]  To prevail on an unfair and deceptive trade practices claim, plaintiffs must show: (1) that defendants committed an unfair or deceptive

act or practice; (2) in or affecting commerce; and (3) plaintiffs were injured thereby. *Canady v. Mann*, 107 N.C. App. 252, 260, 419 S.E.2d 597, 602 (1992), *disc. review improvidently allowed*, 333 N.C. 569, 429 S.E.2d 348 (1993). Plaintiffs must also establish they "suffered actual injury as a proximate result of defendants' misrepresentations." *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 184, 268 S.E.2d 271, 273-74 (1980).

N.C. Gen. Stat. § 75-1.1 states that a trade practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980), *overruled in part on other grounds, Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988). Furthermore, a trade practice is deceptive if it "has the capacity or tendency to deceive." *Id.* at 266, 266 S.E.2d at 622. To prevail on this claim, deliberate acts of deceit or bad faith do not have to be shown. *Forsyth Memorial Hospital v. Contreras*, 107 N.C. App. 611, 614, 421 S.E.2d 167, 169-70 (1992), *disc. review denied*, 333 N.C. 344, 426 S.E.2d 705 (1993). Instead, plaintiffs must demonstrate that the act " 'possessed the tendency or capacity to mislead, or created the likelihood of deception.' " *Id.* (quoting *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 279 S.E.2d 1 (1981)). "[I]t is a question of law for the court as to whether these proven facts constitute an unfair or deceptive trade practice." *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 664, 370 S.E.2d 375, 389 (1988), *aff'd*, 335 N.C. 183, 437 S.E.2d 374 (1993).

However, it is well recognized that actions for unfair or deceptive trade practices are distinct from actions for breach of contract. *Lapierre v. Samco Development Corp.*, 103 N.C. App. 551, 559, 406 S.E.2d 646, 650 (1991). "[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700, *disc. review denied*, 332 N.C. 482, 421 S.E.2d 350 (1992). Substantial aggravating circumstances attendant to the breach must be shown. *Id.*

In this case, plaintiffs have not shown or alleged any substantially aggravating circumstances on the part of defendants. In any event, this is just a simple contract case based on the promissory note between the Boyds and Read, and the breach of payment on a note does not give rise to an unfair and deceptive trade practice claim. *See Branch Banking and Trust Co.*, 107 N.C. App. at 62, 418 S.E.2d at

700. The instant situation is merely a business deal gone sour because the business did not make enough money. Therefore, this assignment of error is overruled.

In conclusion, there was insufficient evidence to submit to the jury on the claims against the Drums and Balls Creek. The court properly granted their motions for directed verdict. For the foregoing reasons, the decision of the trial court is

Affirmed.

Judge LEWIS concurs.

Judge GREENE dissenting in part.

Judge GREENE dissenting in part.

I agree with the majority that the trial court did not err in denying the plaintiffs' motion to amend their pleadings. I further agree, for the reasons given by the majority, that the granting of the Drums' motion for directed verdict was not error. I do not agree, however, that directed verdict for Balls Creek was proper on the plaintiffs' first claim for relief: money loaned and not repaid. On that claim the plaintiffs have presented "more than a scintilla" of evidence and are entitled to have that claim resolved by a jury.

The evidence in the light most favorable to the plaintiffs reveals that they loaned approximately $158,500.00 to Balls Creek, a corporation. Balls Creek was sold by its owners, the Drums, to James Read, with the understanding that James Read would assume the Balls Creek debt to the plaintiffs. On 9 September 1994, James Read executed a promissory note in the sum of $158,500.00 payable to the plaintiffs and agreed to assume the Balls Creek debt to the plaintiffs. On 12 September 1994, Jack Boyd signed a letter addressed to the Drums stating that he agreed "that the [Balls Creek] debt is transferred to [James] Read . . . and that [Balls Creek] will have no further liability [for that debt] after [the sale of Balls Creek to James Read]." Linda Boyd did not sign this letter. After the sale, James Read made eleven payments to the plaintiffs leaving a balance due on the note, as of 1 September 1995, in the amount of $157,645.80.

Balls Creek argues that the letter signed by Jack Boyd on 12 September 1994 constitutes a release of Balls Creek from any further liability on the debt and that it is therefore entitled to directed ver-

dict. The plaintiffs, relying on *Russ v. Harper*, 156 N.C. 444, 72 S.E. 570 (1911), argue that the release does not bar their claim because it was not under seal. In any event, the plaintiffs contend that the release is without valuable consideration and even if there is valuable consideration, it is not binding on Linda Boyd because it was not signed by her.

The *Russ* case, relied upon by the plaintiffs, does hold that the writing therein could not be treated as a "technical release" because it was not under seal. *Russ*, 156 N.C. at 450, 72 S.E. at 573. It is a mistake, however, to read that case as holding that all releases must be under seal in order to be valid. It is true that at common law a release was "technically an instrument under seal." 66 Am. Jur. 2d *Release* § 5 (1973). A release, however, is nonetheless "good without a seal where full payment has been made or other sufficient consideration has been given therefor." *Id.* Thus, the absence of a seal on the letter from James Boyd to the Drums does not disqualify it from constituting a valid release of the Balls Creek debt. The question instead is whether the purported release was given for valuable consideration. Balls Creek argues that the execution of the promissory note by James Read to the plaintiffs constitutes valuable consideration for the release. While this is some evidence in support of Balls Creek's argument, it is not conclusive because the note was executed three days *before* the execution of the purported release.

Even if this record supported a determination as a matter of law that the letter signed by Jack Boyd was a valid release supported by valuable consideration, the release was not executed by Linda Boyd. The majority holds that because "[Linda] Boyd accepted benefits of the [eleven] payments, [Jack] Boyd acted as her agent when he signed the release." This is some evidence in support of Balls Creek's argument, but, again, it is not conclusive. Agency between a husband and wife is not to be implied and must be shown by either direct evidence or "evidence of such facts and circumstances as will authorize a reasonable and logical inference that he was empowered to act for her." *Norburn v. Mackie*, 262 N.C. 16, 23, 136 S.E.2d 279, 284 (1964). On this record, there is no direct evidence of agency between Jack and Linda Boyd and whether the evidence, in this case, permits a "reasonable and logical inference" of agency requires resolution by a fact-finder and is not subject to resolution as a matter of law. The retention, by Linda Boyd, of some of the benefits of the bargain made by Jack Boyd cannot by itself establish an agency relationship between the spouses. Admittedly, retention of such benefits can

support a finding of agency, but only if there is other evidence of agency in the record. Even assuming the existence of some evidence of agency, the evidence is not conclusive that Linda Boyd retained any of the benefits of the bargain. Although eleven checks were made payable to Linda and Jack Boyd, the record is silent as to whether Linda Boyd retained any direct or indirect benefit from those payments.

In summary, there is sufficient evidence to require submission to the jury of the question of whether the release executed by Jack Boyd was given for valuable consideration and, if so, whether Jack Boyd acted as the agent for his wife Linda Boyd in executing the release. This record does not, however, support a conclusion as a matter of law that the release *is* supported by valuable consideration and *is* binding on both Jack and Linda Boyd. Accordingly, I would reverse the entry of directed verdict for Balls Creek on this claim and remand for trial.