KIMBERLY HICKS, Plaintiff-Appellant,
v.
DUNN-BENSON FORD, INC., Defendant-Appellee.
No. COA08-1088
Court of Appeals of North Carolina.
Filed June 16, 2009
This case not for publication
Craig James for plaintiff-appellant.
Daughtry, Woodard, Lawrence, and Starling, by Luther D. Starling, Jr.; Billy R. Godwin, Jr., P.A., by Billy R. Godwin, Jr., for defendant-appellee.
ROBERT C. HUNTER, Judge.
This case arises out of the transfer of possession of a 2003 Ford Explorer from defendant automobile dealership to plaintiff purchaser after executing a buyer's order and a retail installment contract. Defendant subsequently repossessed the vehicle, claiming that plaintiff had not qualified for financing. Plaintiff filed suit alleging that defendant committed conversion and unfair and deceptive acts or practices in repossessing the vehicle as plaintiff was the rightful owner. Both parties filed a motion for summary judgment and the trial court granted defendant's motion. Plaintiff appeals the order of the trial court. After careful review, we reverse and remand.

Background
On 17 April 2007, Kimberly Hicks (plaintiff) called Dunn-Benson Ford, Inc. (defendant) and spoke with Lewis McKoy (McKoy), a salesperson employed by defendant. Plaintiff told McKoy that she was interested in purchasing a vehicle and described what she was interested in buying. That same day, McKoy called plaintiff back and said he had a car she might like. Plaintiff and her husband then went to the dealership in Dunn, North Carolina and test drove a 2003 Ford Explorer (the Explorer). Plaintiff agreed to pay the asking price for the Explorer.
Plaintiff signed, inter alia, an "Application Statement," which she claimed was filled out by McKoy at her direction. This statement provided that plaintiff was a teacher employed by Clinton City Schools, earning $2,000 gross monthly salary. It also stated that plaintiff received an additional $400 per month working for Companion Home Health and $300 per month in child support. In her deposition, plaintiff claimed she told McKoy she had a total income of approximately $2,000 per month from all sources and that when she signed the form, the section pertaining to other income, i.e., her job with Companion Home Health and the child support payments, was not filled out. Plaintiff admits that on the day the transaction took place, she did not provide any documentation regarding her income, but that several days later, she faxed verification of her income from the school system to McKoy. Plaintiff also signed a "Retail Installment Sale Contract," which stated, inter alia, the terms and conditions of the sale, such as the amount financed and the interest rate. The contract listed plaintiff as the buyer and defendant as the seller, but stated that defendant "assigns its interest in this contract to Americredit Financial Service (Assignee) under the terms of Seller's agreement(s) with Assignee." There was no language present in this contract that would suggest the contract was conditioned upon plaintiff obtaining financing. McKoy testified that pursuant to defendant's policy, plaintiff was verbally informed that a verification process of her credit application would occur after it was processed by the financing company. However, the contract stated, "[t]his contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding."
Plaintiff also signed a buyer's order,[1] which contained the following clause:
This order shall not become binding until unit described above is physically delivered. In the case of a Time Sale, the Dealer shall not be obligated to sell until a finance source approves this Order and agrees to purchase a retail installment contract between the Purchaser and the dealer based on this Order.[2] Americredit Financial Service was listed as the finance source and assignee of the loan according to the retail installment contract, but was not listed on the buyer's order. Only the price of the Explorer was listed on the buyer's order; there was no mention of any finance terms. It appears in the record that plaintiff paid $1,000 to defendant as a down-payment.
McKoy testified that defendant's general practice was to have the potential buyer fill out a buyer's order stating the terms of the agreement. At that stage, the buyer could obtain financing or pay cash for a vehicle. The buyer was also asked to fill out a credit application, a "WE OWE" form, which contained the vehicle's features at that time, and an "As Is" form regarding the status of the vehicle's warranty. McKoy stated that he would then take all of these signed forms to the finance office. The finance manager would review the forms, enter the information provided into the computer, and then request to see the buyer. The finance officer would verify the information provided on the forms with the buyer, review the terms of the retail installment contract, and ask the buyer to complete a title application. Typically, at that point, the lender has faxed a document to defendant stating that financing has been approved at a certain interest rate.[3] At that stage in the process, McKoy would show the buyer how to operate certain features of the vehicle and would place a temporary tag on the vehicle. McKoy testified that this general chain of events occurred during the transaction with plaintiff.
After filling out the paperwork, plaintiff secured insurance for the Explorer, which McKoy verified. McKoy testified that at that point, the dealership's insurance would not be responsible for subsequent accidents.
In her brief, plaintiff claims that she was given a temporary license tag for the Explorer. "New tag" was written on the buyer's order under the section "Tag & Registration Information[.]" McKoy testified that a "30-day tag" was placed on the Explorer, but that typically, an application for a permanent tag would not be submitted to the Department of Motor Vehicles (DMV) until after financing had been approved for the buyer. Plaintiff then left the dealership in the Explorer.
McKoy testified that he called plaintiff multiple times and told her that if she could not verify her income "[t]he bank [was] going to send this deal back[.]" After an unspecified amount of time passed, plaintiff received a call from McKoy, who informed plaintiff that her "income wasn't enough for [the Explorer], but that he could get [her] a higher model truck with less miles for the same money." According to an Americredit log, on 1 May 2007 the "CONTRACT [WAS] RETURNED DUE TO PT JOB/INCOME. . . ." Plaintiff asserts that McKoy never told her that her financing had been denied. In fact, plaintiff's financing had been denied, purportedly because plaintiff's income was significantly less than the cumulative $2,700 per month listed on her application. Again, plaintiff asserts that she told McKoy she earned $2,000 per month total, not $2,700, though the latter is the amount listed on the form plaintiff signed.
Plaintiff testified in her deposition that she could not understand how she could obtain a higher model vehicle for the same money and that she preferred to keep the 2003 model in her possession. Plaintiff also claims that McKoy never told her she needed to bring the Explorer back to the dealership. In his deposition, McKoy testified that plaintiff was informed that she was required to return the Explorer.
Plaintiff, having not received a payment schedule for the Explorer, called Americredit to inquire about making her first payment. She was told by an Americredit representative to contact defendant. Plaintiff elected to send a postal money order in the amount of $439 directly to defendant on 19 May 2007, representing the first payment on the Explorer. Defendant declined to accept payment. On or about 19 May 2007, defendant paid a repossession service to obtain the Explorer from plaintiff's home.
On 7 June 2007, plaintiff filed a complaint in the Superior Court of Sampson County, alleging that defendant engaged in unfair and deceptive acts or practices, as well as conversion of the automobile. Plaintiff did not claim breach of contract or violation of any consumer protection laws. Plaintiff sought compensatory damages in excess of $10,000, punitive damages, treble damages, and attorney's fees. After discovery was complete, plaintiff filed a motion for summary judgment on 1 April 2008. On30 April 2008, defendant filed a motion for summary judgment. On 12 May 2008, a hearing was held concerning the motions for summary judgment. On 21 May 2008, Judge W. Allen Cobb, Jr. granted summary judgment in favor of defendant and denied plaintiff's motion for summary judgment. Plaintiff now appeals that order.[4]

Analysis

I. Standard of Review: Summary Judgment
Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56 (2007). "All such evidence must be considered in a light most favorable to the non-moving party. On appeal, an order allowing summary judgment is reviewed de novo." Howerton v. Arai Helmet, Ltd., 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004) (citation omitted).

II. Conversion
"`Conversion is defined as: (1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner.'" Estate of Graham v. Morrison, 168 N.C. App. 63, 72, 607 S.E.2d 295, 302 (2005) (quoting Di Frega v. Pugliese, 164 N.C. App. 499, 509, 596 S.E.2d 456, 463 (2004)). As a threshold matter, in order to maintain a claim for conversion, plaintiff must show that she possessed an ownership interest in the vehicle. Upon reviewing the record, we find that genuine issues of material fact existed as to whether plaintiff had an ownership interest in the Explorer.

A. Contract Terms
"As a general rule, the language of a contract should be interpreted as written."Harris v. Stewart, ___ N.C. App. ___, ___, 666 S.E.2d 804, 807 (2008).
In entering into a contract, the parties may agree to any condition precedent, the performance of which is mandatory before they become bound by the contract. The contract "may be conditioned upon the act or will of a third person." Conditions precedent are not favored by the law and a provision will not be construed as such in the absence of language clearly requiring such construction.
Cox v. Funk, 42 N.C. App. 32, 34-35, 255 S.E.2d 600, 601 (1979) (internal citations omitted).
The retail installment contract, signed by the parties,[5] contains the item being sold, the sale price, the annual percentage rate, and all other relevant terms concerning the sale of the Explorer. Defendant does not claim that a contract did not exist; rather, defendant asserts that the contract was conditioned upon a lender finalizing approval of the financing terms and accepting an assignment of the contract.
The retail installment contract at issue contains no conditional language and does not incorporate into its terms any other document. However, plaintiff also signed a buyer's order, allegedly before she signed the retail installment contract, which states, "[i]n the case of a Time Sale, the Dealer shall not be obligated to sell until a finance source approves this Order and agrees to purchase a retail installment contract between the Purchaser and the dealer based on this Order." While this language indicates that the dealer is not obligated to sell the vehicle until a finance source agrees to purchase the retail installment contract, it does not mean that the dealer is barred from completing the sale absent a finance source. In fact, the retail installment contract listed plaintiff as the buyer and defendant as the seller and stated that the seller assigned its interest in the contract to "Americredit Financial Service." Again, there was no conditional language present with regard to this assignment. Defendant contends that Americredit would not accept assignment because plaintiff did not earn the amount listed on the credit application; however, this fact is irrelevant if a binding unconditional contract existed between the parties for sale of the Explorer. If the contract is binding and unconditional, then there is a legitimate argument that defendant is financing the purchase based on all the relevant terms agreed upon, i.e., price, interest rate, and payment amounts. If plaintiff was deceptive on hercredit application, defendant, as the seller and finance source, would maintain any legal remedies against her to the extent the assignment of a contract to a third party failed.
Based on the record presented, we find that plaintiff forecasted sufficient evidence, based on the contract terms, that she had an ownership interest in the Explorer and that defendant wrongfully exercised ownership over the vehicle when it repossessed it. Furthermore, the evidence shows that issues of material fact exist as to whether defendant committed conversion when it repossessed the Explorer.[6] These questions of fact include: 1) whether there was a binding contract of sale between the parties, or whether the contract was conditioned upon plaintiff obtaining financing from a third party; 2) whether plaintiff provided false information on the credit application, and if so, the legal ramifications of such action; 3) whether plaintiff had an ownership interest in the vehicle, ownership being one of the necessary elements of conversion; and 4) whether defendant's actions constituted an unauthorized assumption and exercise of the right of ownership over plaintiff's vehicle.
Accordingly, we find that the trial court erred in granting summary judgment in favor of defendant on the conversion claim.

B. Additional Factors Regarding the Transaction
While we concluded supra that summary judgment was improperly granted for defendant based on the contract terms, we also wish to address several additional factors regarding the transaction. It is important to note that North Carolina recognizes the validity of a conditional contract of sale; however, according to the following statute, in order to have a conditional delivery of a vehicle, the dealer must provide the insurance, not the buyer:
Notwithstanding G.S. 20-52.1, 20-72, and 20-75, nothing contained in those sections prohibits a dealer from entering into a contract with any purchaser for the sale of a vehicle and delivering the vehicle to the purchaser under terms by which the dealer's obligation to execute the manufacturer's certificate of origin or the certificate of title is conditioned on the purchaser obtaining financing for the purchase of the vehicle. Liability, collision, and comprehensive insurance on a vehicle sold and delivered conditioned on the purchaser obtaining financing for the purchaser of the vehicle shall be covered by the dealer's insurance policy until such financing is finally approved and execution of the manufacturer's certificate of origin or execution of the certificate of title. . . .
N.C. Gen. Stat. § 20-75.1 (2007). Here, plaintiff obtained her own insurance for the Explorer. Furthermore, the retail installment contract did not contain language which would indicate a conditional sale.
Though not dispositive, the fact that defendant issued temporary tags for the Explorer indicates that a sale was accomplished. According to the North Carolina Administrative Code, 19A NC ADC 3D.0221 (2007):
(a) Before a temporary marker can be issued by a dealer the following conditions must be met:

(1) Ownership in the vehicle must pass from the dealer to the purchaser by assigning the title or Manufacturer's Certificate of Origin and by delivering the vehicle to the buyer.

(2) Dealer has obtained from purchaser an application for registering and titling of the purchased vehicle.
(3) Dealer has collected all prescribed fees for titling and registering the vehicle.
(4) Dealer has certification (Form FR-2) certifying liability insurance in effect.
(5) Exception. Subparagraphs (a)(2) and (3) of this Rule do not apply when the dealer is selling the vehicle to an out-of-state purchaser and the vehicle is to be removed from the State of North Carolina to the purchaser's home state prior to the expiration of the 30-day temporary registration marker. Form FR-2 (Insurance Certification) shall be completed and kept by the dealer as part of his records.
Id. (emphasis added). There are no documents contained in the record regarding title to the vehicle or Manufacturer's Certificate of Origin, but it is clear that a temporary marker/tag, was placed on the Explorer before plaintiff left defendant's lot.
This statute and the code provision are merely additional factors to consider with regard to whether a sale of the vehicle was finalized in this case.

III. Unfair and Deceptive Acts or Practices
In order to establish a prima facie claim for unfair trade practices [pursuant to N.C. Gen. Stat. § 75-1.1 (2007)], a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff.'"
Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)). N.C. Gen. Stat. § 75-1.1 states that a trade practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Furthermore, a trade practice is deceptive if it "has the capacity or tendency to deceive." To prevail on this claim, deliberate acts of deceit or bad faith do not have to be shown. Instead, plaintiffs must demonstrate that the act "`possessed the tendency or capacity to mislead, or created the likelihood of deception.'"
Boyd v. Drum, 129 N.C. App. 586, 593, 501 S.E.2d 91, 97 (1998) (internal citations omitted) (emphasis added). "The jury decides whether the defendant has committed the acts complained of. If it finds the alleged acts have been proved, the trial court then determines as a matter of law whether those acts constitute unfair or deceptive practices in or affecting commerce." Durling v. King, 146 N.C. App. 483, 487-88, 554 S.E.2d 1, 4 (2001).
Based upon the evidence presented at summary judgment, we find that genuine issues of material fact existed as to whether defendant's actions "`possessed the tendency or capacity to mislead, or created the likelihood of deception.'" Boyd, 129 N.C. App. at 593, 501 S.E.2d at 97 (internal citation omitted). North Carolina has not addressed whether the type of "conditional sale" presented in this case is deceptive; however, South Carolina did so in Singleton v. Stokes Motors, Inc., 595 S.E.2d 461 (S.C. 2004). The South Carolina Supreme Court held that: "(1) the practice of having customers sign both an unconditional sales contract and a conditional bailment agreement; and (2) misleading customers to believe that their credit has been approved" constituted unfair and deceptive acts. Id. at 467. Plaintiff in the case sub judice has presented a sufficient forecast of evidence to show that she signed a buyer's order containing conditional language, but signed a retail installment contract that contained no conditions. According to plaintiff, she believed her credit application had been approved, she provided insurance on the vehicle, and was given a temporary tag. She believed that the vehicle belonged to her and she attempted to make a timely payment. Defendant sought to persuade her to trade the 2003 Explorer for a newer version, but did not tell her that her financing had been denied or that the Explorer was not rightfully hers. Defendant then repossessed the vehicle. These facts support plaintiff's assertion that defendant committed an unfair or deceptive act or practice. Defendant presents some contrary evidence, such as McKoy's testimony that plaintiff was aware she had to provide proof of employment and income, and that he repeatedly told her that her financing would fall through if she failed to do so. McKoy further claimed that he told plaintiff she had to bring the vehicle back to the dealership, which plaintiff refused to do, before defendant repossessed it. This contradictory evidence presents material issues of fact to be resolved by the trial court.
Additionally, there is a genuine issue of material fact as to whether plaintiff suffered any actual damages. In her deposition, when asked about her alleged damages, plaintiff claimed that her blood pressure had risen due to the incident and she was placed on a second medication for which she had to pay a co-pay. Furthermore, it is unclear from the record whether plaintiff's $1,000 down-payment was returned. Plaintiff does not allege that she had to purchase another vehicle, but according to her complaint, she has suffered loss of use of the Explorer.
Accordingly, viewing the evidence in the light most favorable to plaintiff, the trial court erred in granting summary judgment for defendant as to the claim for unfair and deceptive acts or practices as there were material issues of fact to be determined.

Conclusion
Upon finding that genuine issues of material fact exist with regard to plaintiff's claims for conversion and unfair and deceptive acts or practices, we must reverse the trial court's grant of summary judgment for defendant and remand this case for further proceedings.
Reversed and Remanded.
Judges CALABRIA and HUNTER, JR., Robert N. concur.
Report per Rule 30(e)
NOTES
[1] This document does not contain a heading stating the official title of the document; however, McKoy refers to this document as a "buyer's order" in his deposition. (McKoy p. 15).
[2] This document is dated 16 April 2007 while the retail installment contract is dated 17 April 2007. The parties do not dispute that the full transaction and signing of both documentstook place on 17 April 2007.
[3] This document is not contained in the record though it is referenced in McKoy's deposition. (McKoy p. 29).
[4] On 19 April 2007, two days after plaintiff signed the contract for the 2003 Ford Explorer, she returned to defendant's dealership and signed a contract for a 2005 Ford Explorer. However, the second purchase is not at issue in this case.
[5] The contract provides a line for the seller's signature, which has "Dunn-Benson Ford" in typed text with the date "04/17/07[.]" (Exh. p. 11). The seller does not contest the validity of this signature.
[6] Again, while the terms of the contract are relevant to ownership, a breach of contract claim was not presented to the trial court.