ELECTRONIC WORLD, INC., Plaintiff v. RICKEY J. BAREFOOT, KATHERINE BAREFOOT, MIKE CHANDLER and TOMMY CHANDLER, Defendants

No. COA01-1197

(Filed 15 October 2002)

### 1. Landlord and Tenant— lease—description—latently ambiguous

The trial court erred by concluding that a lease was void for an insufficient description of the land conveyed where the description referred to a highway and store, from which the property could possibly be identified with certainty. The lease was latently rather than patently ambiguous and the court should have considered extrinsic evidence before ruling on the validity of the lease.

### 2. Statute of Frauds— lease—possibly invalid—other claims not barred

Claims for trespass, civil conspiracy, unfair and deceptive trade practices, and monies owed were not necessarily barred because they arose in connection with a lease that could be declared void under the Statute of Frauds. The Statute of Frauds bars only enforcement of the invalid contract; it does not bar other claims even though those claims arose in connection with an invalid lease.

### 3. Trespass— summary judgment—disputed lease

The trial court erred by granting summary judgment for defendant on a civil trespass claim where there was a genuine issue of material fact regarding the extent of the property rented by plaintiff. Moreover, plaintiff forecast sufficient evidence to overcome defendant's motion for summary judgment in that plaintiff was in possession, the entry by defendant was unauthorized, and plaintiff was injured.

### 4. Conspiracy— civil—lease dispute

The trial court erred by granting summary judgment for defendants on a civil conspiracy claim arising from a disputed lease where the evidence, viewed in the light most favorable to plaintiff, establishes that defendants attempted to coerce plaintiff to sell a convenience store located on the leased property through hostile and threatening behavior; defendant Chandler began parking used vehicles on plaintiff's leased property and

allowed its customers to use the property as a parking lot, which forced plaintiff to discontinue its sale of gasoline; and defendant Barefoot, the property owner, was verbally abusive and refused to take any action when plaintiff's president requested assistance. These actions, taken in total, create more than a suspicion or conjecture regarding a civil conspiracy between Barefoot and Chandler.

**5. Unfair Trade Practices— disputed lease—summary judgment**

The trial court erred by granting summary judgment for defendant on an unfair practices claim arising from a disputed lease.

**6. Real Property— removal of underground gasoline tanks— claim for monies owed—summary judgment**

The trial court erred by granting summary judgment for defendants on a claim for monies owed arising from a disputed lease where issues of material fact arose from the removal of gasoline tanks.

**7. Appeal and Error— preservation of issues—failure to ask for ruling**

An assignment of error was waived where plaintiff asked for leave to amend its complaint after a summary judgment ruling, the trial court did not rule on that request, and plaintiff did not ask for a ruling.

Appeal by plaintiff from judgment entered 29 June 2001, *nunc pro tunc* 4 June 2001, by Judge James F. Ammons, Jr., in Columbus County Superior Court. Heard in the Court of Appeals 11 June 2002.

*Marshall, Williams & Gorham, L.L.P., by John L. Coble, for plaintiff appellant.*

*Ramos and Lewis, L.L.P., by Michael R. Ramos, for defendant appellees.*

TIMMONS-GOODSON, Judge.

Electronic World, Inc. (hereinafter "plaintiff") appeals from summary judgment granted by the trial court in favor of Rickey Barefoot, Katherine Barefoot, Mike Chandler, and Tommy Chandler (hereinafter collectively, "defendants"). For the reasons stated herein, we reverse the judgment and remand this case to the trial court.

ELECTRONIC WORLD, INC. v. BAREFOOT

[153 N.C. App. 387 (2002)]

An examination of the pleadings, exhibits, and depositions filed in response to defendants' summary judgment motion, considered in the light most favorable to plaintiff, tends to show the following: In 1986, plaintiff entered into a lease with Frances Barefoot for the possession of certain real property located at 924 Jefferson Street, also known as U.S. Highway 74/76, in Whiteville, North Carolina. The terms of the lease ("1986 lease") included possession of a store named "Shorty's Convenient Mart" (hereinafter "Shorty's") located on the property. The property also included two underground gasoline storage tanks ("original gasoline tanks"). After acquiring possession of the property, plaintiff installed two additional underground gasoline tanks ("additional gasoline tanks"), attached gasoline pumps on the gasoline aisles, and acquired the necessary permits for the sale of gasoline at Shorty's. Plaintiff tendered rental payments to Frances Barefoot for the full term of the 1986 lease.

On or before 16 December 1996, Frances Barefoot transferred title of the property to her son, Rickey Barefoot ("Barefoot") and his wife, Katherine Barefoot (hereinafter collectively, "the Barefoots"), and on 16 December 1996, plaintiff and the Barefoots executed a lease ("1996 lease") of the property. Under the terms of the 1996 lease, plaintiff and the Barefoots agreed that the lease would begin 20 October 1996 and expire 19 October 2007. Plaintiff agreed to pay $425.00 per month for rental of the premises, with a gradual increase over the years of the lease.[1] The lease agreement contained the following description of the premises: "all that certain parcel of land together with improvements presently known as Shortie's [sic] Convenient Mart, located on U.S. 74/76 in Whiteville, Columbus County, North Carolina." During the lease negotiations, Rickey Barefoot and plaintiff discussed the fact that both the original and additional gasoline tanks required removal and/or replacement pursuant to state and federal law. Barefoot acknowledged that the tanks needed replacement and agreed to repave the parking lot once the replacement was completed.

Plaintiff thereafter continued to sell gasoline at Shorty's and tender rental payments to the Barefoots. In December of 1997, the Environmental Protection Agency ("EPA") informed plaintiff that it must remove or replace the original gasoline tanks. Raymond Banks Watts ("Watts"), the president of plaintiff corporation, informed

---

1. Specifically, the lease required plaintiff to pay $425.00/month for the first three years, $475.00/month for the next two years, $550.00/month for next three years, and $625.00/month for the next two years.

Frances Barefoot that he would assist in removing the original gasoline tanks, but that she would have to hire someone for the removal if his equipment was inadequate. According to Watts, Rickey Barefoot informed both Watts and the environmental testing company hired for the job that he would "take care of" the costs for removing the tanks. Consequently, workers began excavating the original gasoline tanks on the property. After the initial excavation, however, Barefoot refused to contribute any further payments, forcing plaintiff to complete the removal at a cost of $5,455.12.

Later that year, Barefoot leased to Mike and Tommy Chandler (hereinafter collectively, "Chandler"), certain real property located at 926 Jefferson Street. Chandler then began operating a business known as "Bogue Motor Sales" on the property, which is adjacent to the property leased by plaintiff. After signing the Barefoot-Chandler lease, Barefoot asked Watts if he was interested in selling Shorty's to Chandler. Watts informed Barefoot that he would discuss the sale of Shorty's with Chandler. Subsequently, Mike Chandler approached Watts and offered to purchase Shorty's from plaintiff, but sales discussions quickly collapsed and Mike Chandler in turn informed Watts that "we really don't want the business, we just want the property."

After this incident, Watts witnessed Barefoot visiting the neighboring Chandler business on several occasions. On one such occasion, Barefoot invited Watts to the Chandler office in order to "resolve this." Watts refused, and shortly thereafter, Chandler began parking used vehicles on the property under which the additional gasoline tanks were located. Although Watts repeatedly asked Chandler to remove the vehicles from the property, Chandler refused to do so.

Because the vehicles obstructed plaintiff's access to the gasoline tanks, plaintiff allegedly was unable to replace them, as required by state and federal law. Plaintiff was thereby forced to discontinue its sale of gasoline at Shorty's. Chandler's customers then began using plaintiff's property as a parking lot—"even to the point of leaving [their] cars parked at [plaintiff's] gas pumps" while they visited and test-drove vehicles from Chandler's business. When Watts asked Barefoot to intervene and prevent Chandler from parking vehicles on the property, Barefoot became "hostile," cursed Watts, refused to acknowledge that plaintiff was entitled to possession of the gasoline tanks, and made no attempts to prevent Chandler from parking vehicles on plaintiff's property. Watts contacted law enforcement officers on several occasions regarding Chandler's increasingly hostile

behavior towards plaintiff. For example, on one occasion, Tommy Chandler threatened to "slap [Watts'] head off."

After the dispute between plaintiff and Chandler arose, Barefoot surveyed the property. Barefoot then informed Watts that the land encompassing the gasoline tanks was part of the rental property covered in the Barefoot-Chandler lease. In 1999, after receiving a letter from the EPA, Chandler removed the cars from the land where the gasoline tanks were located. Barefoot did not, however, remove or replace the additional gasoline tanks as required by state and federal law. Subsequently, plaintiff hired a consultant to remove the additional gasoline tanks at a cost of $8,447.00.

On 16 February 2000, plaintiff filed a complaint against defendants alleging breach of lease, trespass, civil conspiracy, and unfair and deceptive trade practices. Plaintiff also sought recovery for monies allegedly due from Barefoot for removal of the original and additional gasoline tanks. On 18 May 2000, defendants filed their answer, in which they asserted four affirmative defenses, including, inter alia, that plaintiff's lease failed "to adequately describe the leased premises as required by the statute of frauds." Moreover, Chandler asserted a counterclaim against plaintiff for trespass.

On 8 February 2001, defendants filed a motion for summary judgment, which was heard by the trial court on 4 June 2001. Upon review of the pleadings, exhibits, depositions, and arguments of counsel, the trial court found that "the lease referred to in plaintiff's complaint and attached thereto and giving rise to plaintiff's claim is void in that the description contained in said lease is inadequate to support the actions of the plaintiff." The trial court therefore concluded that defendants were entitled to judgment as a matter of law and consequently granted defendants' motion for summary judgment. Plaintiff appeals.

---

The dispositive issues before this Court are whether the trial court erred in (1) concluding that the lease referenced in the complaint was void and (2) granting summary judgment in favor of defendants based on its conclusion that a lease rendered void by the statute of frauds bars any claims that arise in connection with the lease.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001). The party moving for summary judgment has the burden of showing that either an essential element of the plaintiff's claim does not exist, or that plaintiff cannot produce evidence to support an essential element of the claim. *Evans v. Appert*, 91 N.C. App. 362, 365, 372 S.E.2d 94, 96, *disc. review denied*, 323 N.C. 623, 374 S.E.2d 584 (1988). In determining the propriety of summary judgment, all evidence is viewed in the light most favorable to the non-movant. *See Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

[1] Plaintiff contends that the trial court erred in concluding that the lease referenced in plaintiff's complaint was void because the description of the land conveyed was insufficient as a matter of law. We agree with plaintiff.

To be enforceable, a lease must meet the requirements of the statute of frauds. *See* N.C. Gen. Stat. § 22-2 (2001). Section 22-2 of the North Carolina General Statutes states that, "all . . . leases and contracts for leasing lands exceeding in duration three years from the making thereof, shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith." *Id.* "The writing must contain a description of the land to be conveyed, certain in itself, or capable or being rendered certain by reference to an external source referred to therein." *House v. Stokes*, 66 N.C. App. 636, 638, 311 S.E.2d 671, 673, *cert. denied*, 311 N.C. 755, 321 S.E.2d 133 (1984). "If the description set forth in the writing is uncertain in itself to locate the property, and refers to nothing extrinsic by which such uncertainty may be resolved, such ambiguity is said to be 'patently' ambiguous[,]" and the contract is held to be void. *Brooks v. Hackney*, 329 N.C. 166, 171, 404 S.E.2d 854, 858 (1991). The determination of whether a description is patently ambiguous is a question of law for the court. *See Kidd v. Early*, 289 N.C. 343, 353, 222 S.E.2d 392, 400 (1976). A description of property is merely latently ambiguous, however, "if it is insufficient, by itself, to identify the land, but refers to something external by which identification might be made." *House*, 66 N.C. App. at 638, 311 S.E.2d at 674. Where the ambiguity is latent, extrinsic evidence may be offered to identify the property. *See Lane v. Coe*, 262 N.C. 8, 13, 136 S.E.2d 269, 273 (1964).

The property description at issue in the present case is as follows: "all that certain parcel of land together with improvement

presently known as Shortie's Convenient Mart, located on U.S. 74/76 in Whiteville, Columbus County, North Carolina." We do not conclude that such a description creates "a state of absolute uncertainty" as to its precise location. *Lane*, 262 N.C. at 13, 136 S.E.2d at 273. The location of the highway, as well as the name of the store, provide sufficient indicators by which the property could "possibly be identified with certainty." *Id.* As such, the property description contained in the lease was latently rather than patently ambiguous, and the trial court should have considered extrinsic evidence in order to determine the identity of the property before ruling on the validity of the lease. *See id.; Yaggy v. B.V.D. Co.*, 7 N.C. App. 590, 599-600, 173 S.E.2d 496, 502 (1970). The trial court therefore erred in concluding that the lease was void.

**[2]** Moreover, plaintiff's other claims for trespass, civil conspiracy, unfair and deceptive trade practices, and monies owed were not necessarily barred because they arose in connection with a lease that may be declared void. "It has long been the rule in this State that the Statute of Frauds bars only enforcement of the invalid contract; it does not bar other claims which a party might have even though those claims arise in connection with the [invalid] lease." *Kent v. Humphries*, 303 N.C. 675, 679, 281 S.E.2d 43, 46 (1981). We now examine plaintiff's other claims to determine whether summary judgment was properly entered as to each claim.

*Trespass*

**[3]** A trespass is a wrongful invasion of the possession of another. *See Matthews v. Forrest*, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952). "The elements of a trespass claim are that plaintiff was in possession of the land at the time of the alleged trespass; that defendant made an unauthorized, and therefore unlawful, entry on the land; and that plaintiff was damaged by the alleged invasion of his rights of possession." *Jordan v. Foust Oil Company*, 116 N.C. App. 155, 166, 447 S.E.2d 491, 498 (1994), *disc. review denied*, 339 N.C. 613, 454 S.E.2d 252 (1995).

In the present case, plaintiff held a sufficient property interest in the rental property to maintain a claim for trespass. *See Maintenance Equipment Co. v. Godley Builders*, 107 N.C. App. 343, 351, 420 S.E.2d 199, 203 (1992) (holding that a tenant who paid rent for the right to occupy and use certain property owned by a railroad company had sufficient possessory interest to maintain a trespass suit against the adjoining property owner), *disc. review denied*, 333 N.C. 345, 426

S.E.2d 707 (1993). The evidence viewed in the light most favorable to plaintiff tends to show that plaintiff tendered rental payments to the Barefoots and was in lawful possession of the land. According to Watts' deposition, Barefoot and plaintiff agreed that the property where the additional gasoline tanks were located was part of plaintiff's rental property. As such, genuine issues of material fact exist regarding the extent of the property rented by plaintiff. Further, plaintiff was in actual possession of the rental property at the time Chandler committed the alleged trespass. Finally, Chandler's entry onto plaintiff's rental property was unauthorized and caused injury to plaintiff. We hold that plaintiff forecast sufficient evidence to overcome defendants' motion for summary judgment regarding plaintiff's trespass claim.

## Civil Conspiracy

[4] "A civil conspiracy claim consists of: (1) an agreement between two or more persons; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) which agreement resulted in injury to the plaintiff." *Boyd v. Drum*, 129 N.C. App. 586, 592, 501 S.E.2d 91, 96 (1998), *affirmed per curiam*, 350 N.C. 90, 511 S.E.2d 304 (1999). While an action for civil conspiracy "may be established by circumstantial evidence, sufficient evidence of the agreement must exist 'to create more than a suspicion or conjecture in order to justify submission of the issue to a jury.' " *Id.* (quoting *Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981)).

In the present case, the evidence viewed in the light most favorable to plaintiff establishes that defendants attempted to coerce Watts into selling Shorty's through hostile and threatening behavior. After signing their lease with one another, both Barefoot and Chandler pressured Watts to sell Shorty's. When plaintiff refused to sell the business, Barefoot and Chandler acted in an openly hostile manner towards Watts. Thereafter, Chandler began parking used vehicles on plaintiff's property and refused to remove the vehicles, despite plaintiff's protests. Chandler also allowed its customers to use plaintiff's property as a parking lot. These actions forced plaintiff to discontinue its sale of gasoline at Shorty's. When Watts requested Barefoot's assistance in the matter, Barefoot verbally abused him and refused to take any action to prevent Chandler from parking its vehicles on plaintiff's property. Further, Tommy Chandler threatened Watts with physical violence on at least one occasion. These actions, taken in total, create more than a suspicion or conjecture regarding whether a civil conspiracy existed between Barefoot and Chandler.

Therefore, the trial court erred in granting summary judgment to defendants on plaintiff's civil conspiracy claim.

## Unfair and Deceptive Trade Practices

[5] Plaintiff's claim for unfair and deceptive trade practices is governed by section 75-1.1 of the North Carolina General Statutes, which states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a) (2001). This Court has held that the renting of commercial property satisfies the statutory requirement of "commerce" under this section. *See Kent v. Humphries*, 50 N.C. App. 580, 589, 275 S.E.2d 176, 183, *affirmed as modified*, 303 N.C. 675, 281 S.E.2d 43 (1981). The same facts that exist to support plaintiff's civil conspiracy claim against defendants likewise support plaintiff's claim for unfair and deceptive trade practices. The trial court therefore erred in granting summary judgment to defendants on plaintiff's unfair and deceptive trade practices claim.

## Monies Owed

[6] In 1997, state and federal law required the removal of the original gasoline tanks. Plaintiff contends that the original gasoline tanks belonged to Barefoot, and that Barefoot agreed to bear the cost of removal. Despite Barefoot's assertions that he would finance the tank removal, plaintiff was forced to reimburse the workers for the excavation, whereby plaintiff incurred costs of $5,455.12. Plaintiff incurred further costs of $8,447.00 when it was forced to remove the additional gasoline tanks. We conclude that plaintiff presented genuine issues of material fact precluding defendants' motion for summary judgment regarding plaintiff's claim for monies owed. The trial court therefore erred in granting summary judgment to defendants on this claim.

## Estoppel

[7] In addition, plaintiff also assigns as error the trial court's denial of plaintiff's right to assert that defendants were equitably estopped from contesting the validity of the lease. "In order to preserve a question for appellate review . . . . it is . . . necessary for the complaining party to obtain a ruling upon the party's request, objection or motion." N.C.R. App. P., Rule 10(b)(1) (2002). In the present case, at the close of the summary judgment hearing, plaintiff asked the trial court for leave to amend its complaint to assert estoppel to defend-

ants' statute of frauds defense. The trial court did not rule on plaintiff's request, however, and plaintiff did not ask for a ruling. Therefore, pursuant to Rule 10(b)(1), this assignment of error is waived. We note, however, that plaintiff may properly renew its request for amendment of its complaint upon remand to the trial court.

In conclusion, we reverse the trial court's entry of summary judgment in favor of defendants and remand this case to the trial court. The judgment of the trial court is therefore

Reversed and remanded.

Judges GREENE and HUNTER concur.