CARL E. NESBIT, JR. and wife, TINA NESBIT, Plaintiffs,
v.
WILLIAM L. CRIBBS and wife, DIANE CRIBBS, Defendants.
No. COA09-886.
Court of Appeals of North Carolina.
Filed: March 16, 2010.
This case not for publication
Collins & Hensley, P.A., by Joseph M. Collins, for PlaintiffA-ppellees.
Coward, Hicks & Siler, P.A., by William H. Coward, for Defendant-Appellants.
BEASLEY, Judge.
William L. Cribbs and Diane Cribbs (Defendants) appeal from: (1) the 15 September 2008 order granting partial summary judgment in favor of Carl E. Nesbit, Jr. and Tina Nesbit (Plaintiffs), determining as a matter of law that the lease contained in the written document between the parties is terminable at will by either party and (2) the order entered 6 April 2009 following a bench trial granting judgment for Plaintiffs and dismissing Defendants' counterclaims. For the following reasons, we affirm in part and reverse and remand in part.
Plaintiffs and Defendant William L. Cribbs entered into a written agreement (Agreement) dated 1 September 1996 for the purchase by Plaintiffs of approximately one acre of land and a mobile home located at 41 May Drive in the Iolta Community of Franklin, North Carolina. The Agreement set forth that the principal amount of the purchase would be $26,500.00 and specified the monthly payment terms of the seller-financed sale. Included in the Agreement was a provision that Plaintiffs would lease the front portion of the property to Defendant Cribbs for the sum of $1.00 per year "indefinitely."
As of 3 September 1996, the date on which Plaintiffs and Defendant Cribbs executed the contract, said Defendant was the owner of 1.17 acres located at 44 McCall Circle in Franklin, North Carolina. Defendant Cribbs had entered into an "Offer to Purchase and Contract" with William and Gertrude Lopanik for the sale of certain real property said to be located at 44 McCall Circle, Franklin, Macon County, North Carolina. The purchase price was $18,500.00. On 31 October 1995, Defendant Cribbs received a general warranty deed for 1.17 acres, said deed being recorded in Deed Book C-21, at Page 942 of the Macon County Land Registry. A survey map prepared by Sprinkle Surveying, P.A. on 8 July 2006 depicts the location and boundaries of the property between McCall Circle and May Drive in Franklin Township, Macon County, North Carolina. This real property was the only property owned by Defendant Cribbs in the vicinity of May Drive, Franklin, North Carolina at the time the Agreement was executed.
At the time the parties signed the Agreement, the mobile home which Plaintiffs intended to purchase was situated on the property to the north. Plaintiff Carl E. Nesbit, Jr. and Defendant Cribbs had walked the property prior to executing the Agreement and marked the dividing line between the front portion, which Plaintiffs were to lease to Defendant Cribbs, and the back portion of the property. Plaintiffs moved onto the property within one month of signing the Agreement and continued to pay monthly payments to Defendant Cribbs for approximately ten years thereafter.
Since the parties entered into the Agreement, Defendants have moved two mobile homes upon the front portion of the property, shown as Lot 2 of the Sprinkle Surveying plat, and have maintained control, rents, and leases of said mobile homes. The mobile homes have remained on the property throughout the pendency of this action. On 18 June 1998, Defendant Cribbs forwarded a check to Plaintiffs in the sum of $2.00, representing payment for the lease on the front portion of the property from September 1996 until September 1998. On 21 June 1999, Defendant Cribbs forwarded another check to Plaintiffs in the sum of $25.00 for lease payments through October 2024.
Prior to signing the Agreement, and thereafter, Defendant Cribbs had made preparations with respect to the front portion of the property so that he could place mobile homes on it and lease them to third parties. On or about 6 February 1996, Defendant Cribbs paid West Plumbing for the preparation of water lines on the property, and on 12 July 1996, he made an application to Macon County for septic systems for two mobile homes to be placed on the property. At the time Defendant Cribbs applied for the septic tanks, he received three separate 911 addresses. These addresses were provided on or about 12 June 1996 and were for: 41 May Drive, 15 May Drive, and 349 McCall Circle. However, at no time prior to or after the execution of the Agreement between the parties was the property surveyed out specifically to denote such 911 change.
On 12 August 1996, Defendant Cribbs had obtained two improvement permits for two mobile homes, which he intended to place on the property. On 15 August 1996, a mobile home was moved onto the property with the address of 15 May Drive, and Defendant Cribbs obtained a building permit for said address the next day. As of August 1996, the underground water lines to the mobile home locations on the front portion of the property were completed. On 2 September 1996, a subsurface sewerage permit was obtained from Macon County by Defendant Cribbs, and on or about 4 September 1996, the septic system was installed. Both Plaintiffs and Defendants understood and agreed, and continue to agree, that the mobile homes on the front portion of the property are the sole property of Defendants and that Defendants have the right and ability to remove the same from the property at their will.
In 2006, Defendants erected, or caused to be erected, a metal fence upon the division line establishing the front portion of the property. Defendants had the property surveyed by Sprinkle Surveying, as mentioned above, to show the location of the division line.
When Plaintiffs tendered final payment, they made demand upon Defendants for a warranty deed, which Defendants refused to deliver. On 5 April 2007, Plaintiffs filed a declaratory judgment action against Defendants, seeking a determination of the property to be conveyed and of the lease provisions of the Agreement. Further, Plaintiffs sought an order that Defendants tender to them a deed for the property. On 30 April 2008, Plaintiffs moved for partial summary judgment on the grounds that the word "indefinitely" in the lease-back provision converted that portion of the Agreement into a tenancy at will. At the hearing for partial summary judgment, the trial court ruled that the lease was for an indefinite term and, thus, terminable at will as a matter of law. Defendants gave notice of appeal, and both parties filed briefs, but Defendants subsequently dismissed their appeal before a hearing was had on the matter. Following a bench trial at the 2 March 2009 term of Macon County District Court, the trial court entered judgment in favor of Plaintiffs on 6 April 2009. The trial court ordered that the Agreement at issue is a contract for the purchase of 1.17 acres, located at 41 May Drive, Franklin, Macon County, North Carolina, as described in the deed from William and Gertrude Lopanik. The court also adjudged that the purchase price for 1.17 acres was $26,500.00 and that said sum had been paid or tendered in full from Plaintiffs to Defendants. Additionally, the trial court concluded that the lease for the front portion of the property consisted of 0.554 acre, the same being designated as Lot 2 on the survey plat by Sprinkle Surveying. Finally, the trial court dismissed Defendants' claims and awarded Plaintiffs specific performance, ordering Defendants to execute and deliver to them a warranty deed. Defendants appeal.

DISCUSSION

I. Duration of the Lease
Defendants challenge the trial court's ruling that the lease-back provision in the Agreement does not specify a determinate length of time and thus, as a matter of law, the lease is terminable at will by either party. They contend the trial court erred in granting Plaintiffs' pre-trial Motion for Partial Summary Judgment on the grounds that (1) there is a genuine issue of material fact as to the term of the parties' lease and (2) the court attempted to convert the lease provision to a tenancy at will instead of a periodic tenancy.

A. Standard of Review

We review the trial court's granting of partial summary judgment under a well-established standard: "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that `there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting Forbis v. Neal, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)); see also N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). "A `genuine issue' is one that can be maintained by substantial evidence." Dobson v. Harris, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). "In ruling on a motion for summary judgment, `the court may consider the pleadings, depositions, admissions, affidavits, answers to interrogatories, oral testimony and documentary materials,'" Howerton v. Arai Helmet, Ltd., 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004) (quoting Dendy v. Watkins, 288 N.C. 447, 452, 219 S.E.2d 214, 217 (1975)), and "`the trial judge must view the presented evidence in a light most favorable to the nonmoving party.'" Will of Jones, 362 N.C. at 573, 669 S.E.2d at 576 (quoting Dalton v. Camp, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001)). "If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial[,]" and "[i]f there is any question as to the weight of evidence summary judgment should be denied." Id. at 573-74, 669 S.E.2d at 576-77 (internal citations omitted). As further detailed below, "[c]onstruction of deeds and contracts presents additional considerations on a motion for summary judgment[.]" Metcalf v. Black Dog Realty, LLC, ___ N.C. App. ___, ___, 684 S.E.2d 709, 717 (2009). Because the trial court's conclusion that the lease is a tenancy at will is contingent on the interpretation of "indefinitely," we consider this threshold issue.

B. Interpretation of the Term "Indefinitely"

Defendants first argue that the term "indefinitely" used to define the duration of the lease is ambiguous and, accordingly, there exists a genuine issue of material fact as to its meaning. They contend that the trial court erred in granting Plaintiffs' pre-trial Motion for Partial Summary Judgment and, rather, should have considered extrinsic evidence to determine the parties' intentions regarding the term of the lease. We disagree.
In light of the standard of review set out above, we must consider the trial court's construction of the lease term "indefinitely" in conjunction with general principles of contract interpretation. See Wal-Mart Stores, Inc. v. Ingles Mkts., Inc., 158 N.C. App. 414, 418, 581 S.E.2d 111, 115 (2003) ("[T]he provisions of a lease are interpreted according to general principles of contract law.").
"The terms of a lease, like the terms of any contract, are construed to achieve the intent of the parties at the time the lease was entered into." Lexington Ins. Co. v. Tires Into Recycled Energy and Supplies, Inc., 136 N.C. App. 223, 225, 522 S.E.2d 798, 800 (1999). For, it has been long established in North Carolina that "[w]henever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties at the moment of its execution." Lane v. Scarborough, 284 N.C. 407, 4091-0, 200 S.E.2d 622, 624 (1973). To ascertain the parties' intent, which is "[t]he heart of a contract," the court looks at "`the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.'" Cowell v. Gaston Cty., 190 N.C. App. 743, 746, 660 S.E.2d 915, 918 (2008) (quoting Motor Co. v. Insurance Co., 233 N.C. 251, 253-54, 63 S.E.2d 538, 540-41 (1951)), disc. review denied, 363 N.C. 124, 672 S.E.2d 687 (2009). The authority of the trial court to look outside the four corners of the contract in discerning the intention of the parties depends on the clarity with which their agreement is written. See, e.g., State v. Phillip Morris USA, Inc., 363 N.C. 623, 636, 685 S.E.2d 85, 93 (2009) (summarizing the law on rules of construction in contract interpretation cases).
"`When the language of a written contract is plain and unambiguous, the contract must be interpreted as written and the parties are bound by its terms.'" Atlantic & E. Carolina Ry. Co. v. Wheatley Oil Co., 163 N.C. App. 748, 752, 594 S.E.2d 425, 429 (2004) (quoting Five Oaks Homeowners Assoc., Inc. v. Efirds Pest Control Co., 75 N.C. App. 635, 637, 331 S.E.2d 296, 298 (1985)). On the other hand, "[e]xtrinsic evidence may be consulted when the plain language of the contract is ambiguous," leaving the intention of the parties unclear. Metcalf, ___ N.C. App. at ___, 684 S.E.2d at 719 (quoting Brown v. Ginn, 181 N.C. App. 563, 567, 640 S.E.2d 787, 789-90 (2007)). "`An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., 362 N.C. 269, 273, 658 S.E.2d 918, 922 (2008) (quoting Register v. White, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004)). When the writing, however, is not ambiguous, "an undefined word in a lease `should be given its natural and ordinary meaning.'" Alchemy Communications Corp. v. Preston Dev. Co., 148 N.C. App. 219, 225, 558 S.E.2d 231, 235 (2002) (quoting Charlotte Housing Authority v. Fleming, 123 N.C. App. 511, 514, 473 S.E.2d 373, 375 (1996)).
Where the contract terms are unambiguous, "`[t]he parol evidence rule prohibits the admission of parol evidence to vary, add to, or contradict' the terms of an integrated written agreement." Drake v. Hance, ___ N.C. App. ___, ___, 673 S.E.2d 411, 413 (2009) (quoting Hall v. Hotel L'Europe, Inc., 69 N.C. App. 664, 666, 318 S.E.2d 99, 101 (1984)).
"The parol evidence rule is a rule of substantive law, though it is often expressed as if it were a rule of evidence." As a result, "all prior and contemporaneous negotiations in respect to those elements are deemed merged in the written agreement" and "parol testimony [concerning] prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new and different contract from the one evidenced in the writing, is incompetent."
Franco v. Liposcience, Inc., ___ N.C. App. ___, ___, 676 S.E.2d 500, 507 (2009) (internal citations omitted); see also Insurance Co. v. Morehead, 209 N.C. 174, 175, 183 S.E. 606, 607 (1936) ("It is well-nigh axiomatic that no verbal agreement between the parties to a written contract, made before or at the time of the execution of such contract, is admissible to vary its terms or to contradict its provisions."); Thompson v. First Citizens Bank & Tr. Co., 151 N.C. App. 704, 708-09, 567 S.E.2d 184, 188 (2002) ("`The parol evidence rule . . . prohibits the consideration of evidence as to anything which happened prior to or simultaneously with the making of a contract which would vary the terms of the agreement.'"). "[I]t is `assumed the [parties] signed the instrument they intended to sign[,] . . . [and, absent] evidence or proof of mental incapacity, mutual mistake of the parties, undue influence, or fraud[,] . . . the court [does] not err in refusing to allow parol evidence[.]'" Thompson, 151 N.C. App. at 709, 567 S.E.2d at 188 (quoting Rourk v. Brunswick County, 46 N.C. App. 795, 797, 266 S.E.2d 401, 403 (1980)). For, "where the parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty, it is presumed [that] the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing." Neal v. Marrone, 239 N.C. 73, 77, 79 S.E.2d 239, 242 (1953).
"When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning." Shelton v. Duke Univ. Health Sys., 179 N.C. App. 120, 123, 633 S.E.2d 113, 115 (2006) (quoting Lane, 284 N.C. at 410, 200 S.E.2d at 624); see also Hagler v. Hagler, 319 N.C. 287, 294, 354 S.E.2d 228, 234 (1987) ("When the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court."). "Taking these principles of contract interpretation together with the standard of review for summary judgment, when the language of a contract is not ambiguous, no factual issue appears and only a question of law which is appropriate for summary judgment is presented to the court." Metcalf, ___ N.C. App. at ___, 684 S.E.2d at 719. Because we conclude that there is no genuine issue of material fact as to the parties' intent regarding the term "indefinitely," the duration of the lease is "ripe for judicial interpretation and summary judgment." Id. Thus, the trial court's granting partial summary judgment on this issue was proper.
For the following reasons, we find the term "indefinitely," as used in the lease-back provision, to be clear and unambiguous on its face. The provision reads: "Included in this contract, Carl & Tina agrees [sic] to lease the front portion of the property to William L. Cribbs, for $1.00 a year indefinitely." Plaintiffs argue that the language of the subject contract concerning the duration of the lease is plain and unambiguous and that the dictionary definition should apply. Plaintiffs' brief cites Webster's II New College Dictionary for support of their proposition that "indefinite" means: "Not definite; unclear; vague. Lacking in precise limits. Not decided. Uncertain." Defendants, however, claim that by using the term "indefinitely" to describe the duration of the lease, the parties intended for the lease to endure for the remainder of Defendant William L. Cribbs' lifetime.
As an initial matter, we note that the additional evidence offered by the parties indicates that they disagree at this time about the meaning of the term "indefinitely" and that, at the time the Agreement was executed, they may have had an oral understanding of the term. We are not permitted, however, to review the record for circumstances surrounding the making of the Agreement because the face of the contract is unambiguous. There is nothing in the written Agreement that suggests that the term "indefinitely" as used therein should be given any meaning other than its ordinary one. Moreover, there is no indication that the parties intended for the lease-back provision as a whole to be construed any differently than as worded in the contract. The Agreement in the instant case clearly uses the word "indefinitely" in the ordinary sense of the term, and thus, the parties' intent at the time of contracting was to leave the duration of the lease unfixed.
Other courts that have had the occasion to define the word "indefinitely" in a contract have relied upon the dictionary definition, just as the trial court did in this case. See, e.g., Durable Mfg. Co. v. U.S. Dep't of Labor, 578 F.3d 497, 504 (7th Cir. 2009) (defining "indefinite," pursuant to Webster's Third New International Dictionary, according to its "common usage" where it means "having no exact limits; indeterminate in extent or amount; not clearly fixed"); Winand v. Case, 154 F. Supp. 529, 545-46 (D. Md. 1957) (holding "[t]here is nothing ambiguous about the use of the word `indefinite' as applied to a period of time," and using the definition supplied by Webster's New International Dictionary to determine that the term means "[n]ot definite; undetermined or indeterminate; specifically, . . . having no prescribed or predetermined limit; without stipulation or provision as to number or amount"); see also Ballas v. Symm, 351 F. Supp. 876, 886 (S.D. Tex. 1972) (stating "`[i]ndefinitely' is a simple, well understood word" and employing the definition thereof from Webster's Seventh New Collegiate Dictionary). Accordingly, we conclude, as did the trial court, that "[t]he parties employed a well known word with a well known meaning for the purpose of defining the duration of [the lease]." Winand, 154 F. Supp. at 546.
Therefore, the trial court did not err in applying the common meaning of the term without the aid of parol evidence. Just because "indefinite" by its very definition may mean "uncertain," it is not to say that the meaning or definition of "indefinitely," as used in the lease-back provision, is itself uncertain or ambiguous. See id. Accordingly, the trial court was not authorized to review the record, as Defendant claims it should have done, in order to interpret the parties' intent regarding use of the term "indefinitely." Because we agree with Plaintiffs and the trial court that the lease term is plain and unambiguous, our de novo review is likewise limited to the four corners of the Agreement. We reject Defendants' proposal that the term of the lease was for the duration of Defendant William L. Cribbs's lifetime, as evidenced by the parties' choice of the word "indefinitely" to describe the same. For, the Agreement does not specify any particular definition that the parties intended to impart on the word "indefinitely;" thus, this undefined term of lease is to be given its natural and ordinary meaning. Moreover, the term "indefinitely" is not reasonably susceptible to the interpretation that, by including that word in their Agreement, the parties intended for Defendant Cribbs's tenancy to be the equivalent of a life estate. As discussed above, the word "indefinite" is far more indicative of a temporary condition than a condition of a permanent nature. Accordingly, we conclude that Defendants' proffered interpretation of "indefinitely" as "for the rest of Mr. Cribbs's life" has no merit. Instead, we conclude that "indefinitely" in this context signifies, pursuant to its plain and ordinary meaning, that the duration of the lease has no prescribed or predetermined limit. Therefore, the trial court did not err in refusing to consider parol evidence that may have tended to show the parties understood the term otherwise.
We affirm the trial court's determination that the lease between the parties is for an indefinite amount of time and its granting of partial summary judgment to Plaintiffs on this issue.

C. Tenancy at Will vs. Periodic Tenancy

Defendants' second assignment of error in the trial court's Order for Partial Summary Judgment concerns the determination that the lease is terminable at the will of either party. Defendants argue that the trial court erred in concluding that because the lease-back provision does not specify a determinate length of time, the lease is deemed a tenancy at will, where it should have been declared a periodic tenancy. We agree.
Our Supreme Court has held that the "statute [of frauds] has been repeatedly interpreted as applying to a lease for an indefinite term or for one which may last beyond the three-year period to which a parol lease is limited." Davis v. Lovick, 226 N.C. 252, 255, 37 S.E.2d 680, 681 (1946), overruled on other grounds by Kent v. Humphries, 303 N.C. 675, 679, 281 S.E.2d 43, 46 (1981); see also Stout v. Crutchfield, 21 N.C. App. 387, 389, 204 S.E.2d 541, 543 (1974) ("Every lease must contain some definite provision enabling the parties and the courts to determine when the lease will end."). Plaintiffs cite Barbee v. Lamb for the proposition that "[o]ne who enters into possession of premises under a void lease or under an agreement which is for an indefinite and uncertain term, or for so long as the tenant may wish to occupy the premises, becomes a tenant at will." 225 N.C. at 212, 34 S.E. at 65-66 (internal citations omitted). This rule of law, however, was overruled in Kent v. Humphries because of the inequitable fact that an invalid rental contract rendered the lessees tenants at will, "`whose occupancy [may] be terminated instanter by demand for possession.'" 303 N.C. at 678, 281 S.E.2d at 45 (quoting Davis, 226 N.C. at 255, 37 S.E.2d at 681-82). Intending to remedy this unfairness, our Supreme Court stated:
Accordingly, we hold today that when a tenant enters into possession under an invalid lease and tenders rent which is accepted by the landlord, a periodic tenancy is created. The cases cited above, Davis, Barbee and Mauney, shall no longer constitute authority insofar as they are inconsistent with this holding.
Id. at 679, 281 S.E.2d at 46. "The initial period [of the tenancy] is determined by the interval between the rent payments specified in the invalid lease." Id. at 678, 281 S.E.2d at 46 (quoting Restatement (Second) of Property, Landlord and Tenant (1977)).
Although the Order for Partial Summary Judgment cites no case to support the ruling, Plaintiffs' motion refers to Barbee as the basis for their argument. The trial court, however, should have applied the rule as stated in Kent. For, the fact that the parties entered into a lease for an indefinite and uncertain duration would have, historically, rendered the lease-back provision invalid under the statute of frauds. Defendant William L. Cribbs, however, has taken possession of the leasehold and tendered rent which Plaintiffs have accepted. The trial judge found as fact:
19. That the Defendants have moved two mobile homes upon the front portion of the property, shown as Lot 2 of the Sprinkle Surveying plat, and have maintained control, rents, and leases of said mobile homes, and further, have enjoyed the rents and profits of those mobile homes.
20. That said mobile homes are currently on the property.
. . . .
22. That on 18 June 1998, the Defendants forwarded a check to the Plaintiffs in the sum of $2.00, representing payment for the lease on the front portion of the property from September 1996 until September 1998.
23. That on 21 June 1999, the Defendants forwarded a check to the Plaintiffs in the sum of $25.00, representing payment for the lease on the front portion of the property from October 1999 until October 2024.
According to these facts and in finding that the parties' lease does not specify a determinate length of time, the trial court should have found under Kent that a periodic year-to-year tenancy was created. Therefore, we hold the trial court erred, in its reliance on overruled precedent, by determining that such lease was converted into a tenancy at will and reverse this portion of the partial summary judgment order.

II. Property Descriptions
Defendants argue that the trial court erred in admitting evidence as to the circumstances of the subject Agreement in order to identify the property therein described. They contend that the court should have entered summary judgment for Defendants because the contract between the parties was patently ambiguous. We disagree.
To be enforceable, both contracts to convey and contracts to lease land must meet the requirements of the statute of frauds. See N.C. Gen. Stat. § 22-2 (2009). Under the statute:
All contracts to sell or convey any lands, tenements or hereditaments, or any interest in or concerning them . . . and all other leases and contracts for leasing lands exceeding in duration three years from the making thereof, shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith . . . .
N.C. Gen. Stat. § 22-2. With both types of contracts affecting realty, "`[t]he writing must contain a description of the land to be conveyed, certain in itself, or capable or being rendered certain by reference to an external source referred to therein.'" Electronic World, Inc. v. Barefoot, 153 N.C. App. 387, 392, 570 S.E.2d 225, 229 (2002) (quoting House v. Stokes, 66 N.C. App. 636, 638, 311 S.E.2d 671, 673 (1984)). "`If the description is sufficiently definite for the court, with the aid of extrinsic evidence, to apply the description to the exact property intended to be sold, it is enough.'" Brooks v. Hackney, 329 N.C. 166, 171, 404 S.E.2d 854, 858 (1991) (quoting Lane v. Coe, 262 N.C. 8, 12, 136 S.E.2d 269, 273 (1964). For, the purpose of the property description "is to furnish means of identifying the property to be conveyed by the instrument[.]" Root v. Insurance Co., 272 N.C. 580, 588, 158 S.E.2d 829, 835 (1968).
This Court recently reiterated the well-established principle that "[a]n agreement for the sale of land violates the statute of frauds as a matter of law if it is patently ambiguous[.]" Wolfe v. Villines, 169 N.C. App. 483, 486, 610 S.E.2d 754, 757 (2005). If "the language [of the written instrument] is patently ambiguous, parol evidence is not admissible to aid the [property] description." Root, 272 N.C. at 588, 158 S.E.2d at 835. In the case that an ambiguity is latent, however, "parol evidence is admissible to fit the description to the property sought to be conveyed." Id. at 588, 158 S.E.2d at 836. Accordingly, "`[t]he only requisite in evaluating the written contract, as to the certainty of the thing described, is that there be no patent ambiguity in the description.'" Brooks, 329 N.C. at 171, 404 S.E.2d at 858 (quoting Coe, 262 N.C. at 12-13, 136 S.E.2d at 273). "Whether the ambiguity is a patent ambiguity is a question of law to be decided by the court." Id. (citing Kidd v. Early, 289 N.C. 343, 222 S.E.2d 392 (1976)). We review questions of law de novo. Maxwell v. Michael P. Doyle, Inc., 164 N.C. App. 319, 323, 595 S.E.2d 759, 761 (2004).
Contracts to sell or lease real estate are said to be patently ambiguous "when the terms of the writing leaves [sic] the subject of the contract, the land, in a state of absolute uncertainty, and refer to nothing extrinsic by which it might possibly be identified with certainty." Coe, 262 N.C. at 13, 136 S.E.2d at 273; see also Brooks, 329 N.C. at 171, 404 S.E.2d at 858 ("If the description set forth in the writing is uncertain in itself to locate the property, and refers to nothing extrinsic by which such uncertainty may be resolved, such ambiguity is said to be `patently' ambiguous."). As mentioned above, "[p]arol evidence is not admitted to explain the patently ambiguous description[,]" and "[i]n such case, the contract is held to be void." Id. at 171, 404 S.E.2d at 858. "A description of property is merely latently ambiguous, however, `if it is insufficient, by itself, to identify the land, but refers to something external by which identification might be made.'" Barefoot, 153 N.C. App. at 392, 570 S.E.2d at 229 (quoting House, 66 N.C. App. at 638, 311 S.E.2d at 674). "Where the ambiguity is latent, extrinsic evidence may be offered to identify the property." Id.; see also Wolfe, 169 N.C. App. at 487, 610 S.E.2d at 758 ("A latently ambiguous description requires admission of extrinsic evidence to explain or refute the identification of the land in question, and thus creates a potential issue of material fact which must be determined before the trial court can conclude as a matter of law that the statute of frauds has been met.").
There are two distinct property descriptions at issue in this Agreement: that regarding the sale and that regarding the lease. The language of the property description in the land purchase provision reads: "Approx. 1 Acre of land and a mobile home, located at 41 May Drive in the Iotla Cummunity [sic], Franklin N.C." This description does not create a "state of absolute uncertainty," and we reject Defendants' contention that it is patently ambiguous. Rather, the property description in the land sale provision of the Agreement is latently ambiguous, and the trial court properly admitted extrinsic evidence to determine the identity of the realty at issue. The Agreement refers to the specific community in Franklin, North Carolina wherein the property lies and describes the parcel of real estate by listing the address. Defendant Cribbs' signature appears at the bottom of the Agreement next to the words "Sellers Signature," and at the time the instrument was executed, Defendant Cribbs owned only one property, which consisted of 1.17 acres, in the vicinity of May Drive, Franklin, North Carolina. See, e.g., Taefi v. Stevens, 53 N.C. App. 579, 583, 281 S.E.2d 435, 438 (1981) (concluding that from a property description listing only a street name and number, a lot at that address owned by the plaintiff-seller at the time the contract was signed could be made definite by extrinsic evidence). We conclude the trial court had before it sufficient evidence to resolve any issue of fact as to the precise parcel conveyed and thereby remove the latent ambiguity in declaring the land sale provision valid. See Wolfe, 169 N.C. App. at 487, 610 S.E.2d at 758 ("[S]ufficient extrinsic evidence must be adduced to identify the parcel of land intended to be conveyed by the parties and remove the latent ambiguity in the contractual description for it to be enforceable."). Thus, we affirm the trial court's conclusion that the approximate one acre of land in Franklin, North Carolina to which the Agreement refers, more accurately consists of 1.17 acres, as described in the warranty deed delivered by William and Gertrude Lopanik to Defendant Cribbs on 31 October 1995.
The lease-back provision remains less clear, describing only "the front portion of the property" as the portion to be rented by Defendant Cribbs. The trial court found as fact that Mr. Nesbit and Defendant Cribbs "went to the property and marked, in a manner satisfactory to themselves, the dividing line between the front portion of the property and the back portion of the property, the front portion of the property being the section which the Plaintiffs were to lease to the Defendant." The evidence indicates that, years after both parties took possession of their respective portions, Defendant Cribbs began constructing a fence near the boundary line orally decided upon prior to the execution of the Agreement. A survey map dated 8 July 2006, almost ten years after the Agreement was signed, and prepared at Defendant Cribbs' direction depicts two lots: one being 0.614 acres and the other being 0.554 acre. The trial court indicated that the "lower portion," consisting of 0.554 acre and designated as Lot 2 on the survey plat constituted the property described as the "front portion of the property" in the Agreement. Defendants argue that the trial court erred in admitting this extrinsic evidence because the property description in the lease-back provision was patently ambiguous. Plaintiffs contend, however, and we agree, that even if the description were patently ambiguous and the lease thereby void, the doctrine of equitable estoppel bars Defendants from denying the location of the division line.
Although Plaintiffs did not plead equitable estoppel in their complaint, the issue was argued extensively at trial without objection by Defendants, invoking the rule of "litigation by consent." See N.C. Gen. Stat. § 1A-1, Rule 15(b) (2009) ("When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, either before or after judgment, but failure so to amend does not affect the result of the trial of these issues.").
The doctrine of estoppel rests upon principles of equity and is designed to aid the law in the administration of justice when without its intervention injustice would result. Equity serves to moderate the unjust results that would follow from the unbending application of common law rules and statutes. It is well settled that a party will not be allowed to accept benefits which arise from certain terms of a contract and at the same time deny the effect of other terms of the same agreement.
Brooks, 329 N.C. at 173, 404 S.E.2d at 859 (internal quotations and citations omitted). The Brooks Court found that because the plaintiff had made payments, as required by a land purchase agreement between the parties, for nearly eight years and "used the land as he saw fit" during such period, he was "estopped to deny that a valid agreement existed." Id.; see also Advertising, Inc. v. Harper, 7 N.C. App. 501, 505, 172 S.E.2d 793, 795 (1970) (holding the lessee was estopped from denying the validity of a lease due to an insufficient description of the premises because he had paid the rent for seven months of a nine-year lease).
Here, the parties went upon the property together and drove stakes along each lateral boundary to establish the location of the division line before signing the Agreement. Defendants had one trailer placed on the front portion of the property before the Agreement was executed and added a second trailer shortly thereafter. Later, Defendants had a fence erected upon or close to the division line as established by the stakes earlier placed and commissioned a survey of the property, which included the division line established by the stakes and fencing. Moreover, as found by the trial court, Defendants "have maintained control, rents, and leases of [the two] mobile homes, and further, have enjoyed the rents and profits of those mobile homes," which are situated on the portion denoted Lot 2. Plaintiffs have resided on the upper portion of the property, denoted Lot 1 on the survey plat, and collected rent tendered by Defendant Cribbs for his lease of the remaining portion. Thus, Plaintiffs reasonably relied on the description in the Agreement based on Defendant Cribbs' possession and rental payments thereunder, and consequently, Defendant Cribbs has clearly reaped the benefits of a valid contract. Where Defendants are estopped from denying the validity of the lease-back provision based on the vague property description, we need not address their argument that the writing is patently ambiguous. The evidence shows that "[t]he indefiniteness of the closing boundary line in the description of the land has been alleviated in this case." Brooks, 329 N.C. at 173, 404 S.E.2d at 859. Therefore, we affirm the trial court's conclusion that the leased portion consists of that 0.554 acre area designated as Lot 2 on the 2006 survey.

III. Severability of the Contract
Finally, Defendants argue that the trial court erred both at the partial summary judgment stage and following the bench trial by failing to void the remaining terms of the Agreement based on the invalidity of the lease provision. Defendants contend that the Agreement is entire, and thus, not divisible. They claim that construing the lease as a tenancy at will strips considerable benefits from the Agreement, and because they no longer constitute consideration for the reciprocal provisions, the entire contract is void. This argument is without merit. As stated above, the fact that the lease term is indefinite creates a periodic year-to-year tenancy between the parties. Although Defendants may prefer a different construction of the lease's duration, the lease itself remains valid. Thus, their claim that "if the lease-back provision is void, the remainder of the contract is void" must fail, regardless of whether the Agreement is severable or not, because the lease provision is not void.
In conclusion, we affirm the trial court's determination that the lease did not specify a determinate length of time and was thus of indefinite duration but remand for a finding that a periodic tenancy was created pursuant to Kent. We affirm the trial court's entry of judgment granting specific performance and ordering Defendants to execute and deliver a warranty deed unto Plaintiffs. Affirmed in part, Reversed and Remanded in part.
Judges WYNN and CALABRIA concur.
Report per Rule 30(e).